## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CHERYL SCOTT, on behalf of herself, the Caterpillar 401(k) Retirement Plan, and all similarly situated, | ) ) ) ) | Case No. |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AON HEWITT FINANCIAL ADVISORS, LLC; HEWITT FINANCIAL SERVICES, LLC; HEWITT ASSOCIATES, LLC D/B/A AON HEWITT, | ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

PLAINTIFF Cheryl Scott, on behalf of herself, the Caterpillar 401(k) Retirement Plan (the "Caterpillar Plan"), and as a proposed class representative for all others similarly situated, brings this complaint against Defendants and respectfully alleges as follows.

## PRELIMINARY STATEMENT

1.    Plaintiff Cheryl Scott is a retiree and a participant in the Caterpillar Plan, a retirement plan sponsored by Caterpillar, Inc., Ms. Scott's former employer.  Defendant Hewitt Associates, LLC D/B/A Aon Hewitt ("Hewitt") serves and has served as the record-keeper for the Plan.

2.    At Defendant Hewitt's urging, Ms. Scott – and thousands like her in the Caterpillar Plan and other similarly-situated retirement plans for which Hewitt provided record-keeping services (collectively, with the Caterpillar Plan, the "Plans") – purchased retirement investment advisory services for an additional fee.  Each quarter, Ms. Scott and other Plan participants paid a considerable service fee from their retirement accounts for this advice.  Ms.

Scott and the other Plan participants who signed up for this service received advice from the third-party firm Financial Engines Advisors, LLC ("Financial Engines").

3. For periods prior to 2014, Financial Engines provided services directly to Plaintiff and other Caterpillar Plan participants and was paid directly from participants' accounts. But the fee for those services was significantly higher than it should have been because the agreement between Defendants and Financial Engines required Financial Engines to "kick back" to Defendant Hewitt a significant percentage of the fees charged by Financial Engines, even though Hewitt and its sister company co-Defendants *did not perform any investment advisory or other material services in exchange for the payment they received*. Such a payment-sharing scheme violates federal law designed to protect retirees, such as Ms. Scott and other plan participants.

4. In 2014, the business arrangement between Defendants and Financial Engines was restructured and re-branded so that Defendant Aon Hewitt Financial Advisors, LLC ("AFA"), ostensibly providing the investment advice services to Plaintiff and other Caterpillar Plan participants, directly charged to participants' accounts the fees for those services. But the re-branding of those services was cosmetic only, and, through a sub-advisory agreement between AFA and Financial Engines, all of the investment advice services provided to Plaintiff and other Caterpillar Plan participants continued to be provided by Financial Engines. On information and belief, the only thing that changed as a result of the restructuring was the name of the entity that "provided" the investment advice, and AFA performed no additional services with respect to the advice program than Defendants had provided when Financial Engines had a direct relationship with Caterpillar Plan participants.

5. Importantly, the financial arrangement between Defendants and Financial Engines did not change. AFA charged participants' accounts the same excessive fee that had previously

been charged by Financial Engines, kept the same amount that had previously been kicked back to Defendants by Financial Engines, and paid the balance of the fee to Financial Engines. From all that appears, the principal, if not the only, reason for the re-branding of the service was to conceal the illegal kick-back.

6.      Because of their covert kick-back operations, Defendants and/or Financial Engines effectively overcharged Ms. Scott and thousands of other Plan participants for retirement investment advisory services. Defendants' misconduct caused the hard-earned retirement savings of Mr. Scott and thousands like her to be depleted by millions of dollars.

7.      Ms. Scott brings this action on behalf of the Plans, including the Caterpillar Plan, pursuant to Sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), against AFA; Aon Hewitt Financial Services, LLC ("HFS"); and Hewitt (collectively the "Hewitt Defendants" or "Defendants").

## JURISDICTION

8.      Plaintiff brings this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), and (3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States. This Court also has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§ 1961, 1962 and 1964; 28 U.S.C. §§ 1331, 1332 and 1367; and 15 U.S.C. § 15.

9.      Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. §§ 1391(b) and (c), venue is proper in this judicial district because Defendants have principal places of business in this

district, from which Defendants' corporate services are performed. In addition, the violations alleged herein occurred in this district.

## THE PARTIES

10.     At all relevant times (the "Relevant Period"), Plaintiff Cheryl Scott has been a participant in the Caterpillar Plan, an ERISA Plan as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).  At all relevant times, the Plan was an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). Plaintiff Scott elected to have Financial Engines provide investment advice to her since approximately 2012.

11.     Defendant AFA was incorporated in Delaware on January 7, 2011. AFA's principal place of business is 7201 Hewitt Associates Drive, Charlotte, North Carolina. AFA is a wholly-owned subsidiary of Defendant Hewitt Associates, LLC, D/B/A Aon Hewitt ("Hewitt"). AFA provided services to the Plan and other retirement plans for which Hewitt Associates provided recordkeeping services.  On information and belief, AFA received direct and indirect compensation from the Plans, including the Caterpillar Plan.

12.     Defendant Hewitt, the parent company of AFA, provides recordkeeping services to the Plan under the name "Aon Hewitt."  Hewitt is an indirect, wholly-owned subsidiary of Aon Corporation, which is a publicly-held company whose stock is traded on the New York Stock Exchange under the symbol "AON."  Hewitt is based in Lincolnshire, Illinois and was incorporated in Illinois.  Hewitt provided services to the Plans, including the Caterpillar Plan and, on information and belief, received direct and indirect compensation from the Plans, including the Caterpillar Plan.

13.     Defendant Hewitt Financial Services LLC ("HFS"), a subsidiary of Hewitt, operates as a broker/dealer for retirement plans, including the Plan. HFS is based in Lincolnshire, Illinois. HFS provided services to the Plans, including the Caterpillar Plan and, on information and belief, received direct and indirect compensation from the Plans, including the Caterpillar Plan.

## NATURE OF THE ACTION – ERISA CLAIMS

14.     At all relevant times, Defendant Hewitt, as recordkeeper of the Caterpillar Plan, heavily marketed the use of "professional management services" to Ms. Scott and to other participants in the Plans, including the Caterpillar Plan.  When the Caterpillar Plan first made these services available to Ms. Scott, Financial Engines was the firm that directly provided the advisory services to her.

15.     Ms. Scott paid Financial Engines, and, after 2013, AFA, a hefty fee based on the size of her retirement account.  The most recent "Caterpillar Sponsored 401(k) Plans Fee Disclosure Notice" provides that a Plan participant who signs up for professional management services: "will be charged a fee based on the size of [her or his] account:

- Up to $100,000.00                   0.40% of assets

- $100,000.01 to $250,000.00          0.30% of assets

- $250,000.01 or more                 0.20% of assets"

16.     According to the Notice, these "fees are assessed quarterly. You will be assessed ¼ of the annual fee based on a weighted average of your account balance on the last business day of each month during the quarter."  Ms. Scott has been paying this quarterly assessed fee during the Relevant Period.

17.     On information and belief, at no time during the period when Financial Engines was providing investment advice directly to Caterpillar Plan participants did Hewitt directly notify Ms. Scott or other similarly-situated Plan participants that Hewitt was taking a 20-25% kickback on the amounts paid to Financial Engines for "managed services."  Yet, the required Annual Report of Employee Benefit Plan filing that the Caterpillar Plan submitted to the United States Department of Labor for 2013 clearly shows that **Hewitt was receiving "25% of THE ADVICE FEE PAID AND 20-25% OF THE MANAGED ACCOUNT FEE PAID TO FINANCIAL ENGINES."** *See* 2013 Annual Return/Report of Caterpillar 401(k) Retirement Plan at pg. 4-1 (Service Provider Information for Hewitt Associates LLC) (emphasis added).

18.      On information and belief, the Hewitt Defendants recognized that this kickback information was at-risk of being discovered through the required public disclosures that were increasingly becoming available in on-line repositories (as opposed to paper filings that were historically difficult to access).

19.     Upon information and belief, beginning in 2014, the Hewitt Defendants and Financial Engines changed the structure of their arrangement to hide from public scrutiny the kickback fees that Hewitt was receiving from Financial Engines.  In or around that time, although it was Financial Engines that continued to perform the advisory services to Ms. Scott and similarly-situated participants in the Plans, including the Caterpillar Plan, Hewitt's newly incorporated sister company, AFA, purportedly became the entity that would provide the Plans with advisory services.  Yet, in reality – and for all intents and purposes – Financial Engines continued to do all the actual work related to the investment advisory services that Ms. Scott and similarly-situated participants in the Plans were receiving.

20.     The formulistic change is evident in Part 2A of AFA's February 15, 2016 Form

ADV: Firm Brochure at page 3, which provides that:

> AFA offers advisory and related services to participants in employer-sponsored,
> defined contribution plans for their plan accounts and for retirement accounts
> outside the plans.  AFA offers services for employees' workplace retirement
> accounts through an agreement between AFA and the plan and/or the sponsoring
> employer ("plan sponsor").

21.     In reality, though, Financial Engines continued to provide the advisory services to

Ms. Scott and participants in the Plans, a fact that AFA's Form ADV admits, but attempts to

obscure:

> AFA has hired Financial Engines Advisors LLC to provide sub-advisory services.
> ***We rely exclusively on*** the proprietary software systems and methodology
> developed and maintained by ***Financial Engines Advisors LLC,*** an SEC-
> registered investment advisor, which is unaffiliated with AFA or any of our
> affiliated companies, ***to create target allocations for participants.***

Form ADV at page 4 (emphasis added).

22.     By having the Plans' sponsors "hire" AFA in lieu of Financial Engines, and then

having AFA enter into a sub-advisory agreement with Financial Engines, whereby Financial

Engines performed all the relevant work for Ms. Scott and the similarly-situated Plan

participants, the Hewitt Defendants were no longer required to report the fees they received from

Financial Engines.  Instead, AFA simply skimmed 20-25% off that fee for the Hewitt Defendants

and paid the balance to Financial Engines as a sub-advisory fee.[1] The most recent Annual

---

[1] A similar disclosure appears in the Fee Disclosure Notice that Caterpillar was required to send
to 401(k) Plan participants, provides: "to help you create an investment strategy the Plan offers
you the option to sign up for professional management services. Caterpillar has designated Aon
Hewitt Financial Advisors (AFA), an independent registered investment advisor and a designated
investment manager to provide investment advice and professional management services to Plan
participants. If you choose professional management services, AFA will select and manage your
account investments for you.  Additionally, AFA has hired Financial Engines Advisors LLC
(FEA) to provide sub-advisory services. . ." There is no mention of the fee-splitting arrangement
between AFA and Financial Engines.

Reports of the Caterpillar-sponsored Plans for 2014 and 2015 do not list **any** compensation to Financial Engines from Hewitt or the other Hewitt Defendants. The new arrangement successfully hid this fact from public reporting requirements.

23.     The Hewitt Defendants' fee-skimming arrangement with Financial Engines is illegal under ERISA.  A fiduciary of a retirement plan owes that plan, its participants and beneficiaries duties that have been described as among the "highest known to the law." *Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 602 (8th Cir. 2009).

24.     When choosing service providers for a retirement plan, and especially when choosing a service provider who will be a fiduciary to the retirement plan, ERISA requires that a retirement plan fiduciary act with the care, skill, prudence and diligence that would be exercised by someone who is experienced and knowledgeable about the services to be provided; a prudent expert.  Most fundamentally, ERISA fiduciaries are required to act ***solely*** in the best interests of plan participants.  ERISA § 404(a)(1), 29 U.S.C. 1104(a)(1). "Hiring a service provider in and of itself is a fiduciary function."[2]  *A fortiori,* selecting and hiring a service provider that will be a fiduciary is a fiduciary function.

25.     ERISA prohibits a plan fiduciary from: (i) dealing with the assets of the plan for its own benefit or for its own account; (ii) representing a party or acting in a transaction on behalf of a party whose interests are adverse to the interests of the plan or its participants; and (iii) receiving for its own account any consideration from a party dealing with such plan in a transaction involving plan assets.  ERISA § 406(b), 29 U.S.C. § 1106(b).

---

[2] EBSA Publication *Meeting Your Fiduciary Responsibilities*, available at http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html (last visited January 27, 2017).

26.     The Hewitt Defendants selected and hired Financial Engines as the advisor for periods prior to 2014 and subsequently as the subadvisor to AFA and controlled the negotiation and implementation of the terms and conditions under which Financial Engines would provide investment advice to Ms. Scott and participants of the Plans.  Specifically, the Hewitt Defendants did so regarding the terms of the fee-sharing arrangement (*i.e.*, kickback) between the Hewitt Defendants and Financial Engines for the services that would be provided to retirement plan investors participating in the investment advice program.  Although the Plans' sponsors selected Hewitt as the Plans' record-keeper, if a Plan sponsor wanted to take part in the participant-level investment advice and managed account programs from the suite of available services, it had no choice but to accept Financial Engines as the provider – together with the (undisclosed) unlawful fee-sharing arrangement complained of herein.

27.     Stated differently, Caterpillar and the other Plan sponsors selected the investment advice service as an optional service for the benefit of their Plan participants, but it was Hewitt Defendants that (i) selected Financial Engines as the actual service provider, (ii) controlled the terms and conditions under which the services would be provided and the fees being paid, and (iii) retained the authority to change service providers.

28.     Because the Hewitt Defendants selected Financial Engines as the provider of investment advice to the Plans and negotiated all of the terms and conditions of the agreement with Financial Engines, and because the selection of a plan service provider is a fiduciary function, the Hewitt Defendants are fiduciaries to the Plans with respect to the investment advice services and the agreement with Financial Engines.  The inclusion of an investment advice provider such as Financial Engines for Plans contracting with the Hewitt Defendants for recordkeeping and other administrative services is treated no differently under ERISA than

selection of plan investment choices that are required to be included in a plan's lineup of investment choices.[3]

29.     In turn, because the Hewitt Defendants' agreement with Financial Engines required the fee-splitting arrangement based on the use by participants in the Plans of the investment advice program, the Hewitt Defendants (i) caused the Plans to engage in a transaction (the investment advice services agreement) that is not eligible for the exemption provided by ERISA § 408(b)(2) because the compensation paid for such service is unreasonable; or (ii) caused the Plans to transfer plan assets to, or use by or for the benefit of a party in interest through the collection of excessive and unreasonable fees for which the Hewitt Defendants provided virtually no services; or (iii) received consideration for its own account from a party dealing with the Plan (Financial Engines) in connection with a transaction involving plan assets (managing the investment of participant accounts).

30.     The most recent Form ADV that Financial Engines filed with the Securities and Exchange Commission, in connection with Financial Engines' status as a registered investment adviser, states that Financial Engines:  "may reimburse or compensate certain plan providers for maintaining secure communications links between the plan provider's information systems and

---

[3] "Viewing the evidence in the light most favorable to the Trustees, a reasonable jury could conclude that Nationwide exercises authority or control respecting disposition of plan assets by controlling which mutual funds are available investment options for the Plans and participants.

                              *       *       *

Accordingly, Nationwide may be a fiduciary to the extent that it exercises authority or control over plan assets by determining and altering which mutual funds are available for the Plans' and participants' investments."  *Haddock v. Nationwide Fin. Svcs., Inc.,* 419 F. Supp. 2d 156, 166 (D. Conn. 2006).

[Financial Engines'] systems for the purpose of facilitating the provision of [Financial Engines']

services to [Financial Engines'] clients who are plan participants."

31.    On information and belief, Financial Engines and the Defendants continue to split

the asset-based advisory service fee that they receive from Plan participants who elect to use the

"professional account management" services provided by Financial Engines.

32.    On information and belief, Defendants are also receiving a fee from Financial

Engines based on the number of participants eligible to participate in Financial Engines' online

advice program.

33.    There is no rational justification for an asset-based fee for the minimal fixed level

of service the Hewitt Defendants provide in connection with Financial Engines' investment

advice program, which is little more than simply making the program available.  The level of the

Hewitt Defendants' "services" to a participant who chooses to use Financial Engines' investment

advice service does not increase when that participant's account has grown through additional

contributions or investment gains, yet the fee AFA receives will increase in proportion to the

increase in the value of the account.

34.    Likewise, the Hewitt Defendants provide no greater "service" to one participant

whose account value invested through Financial Engines is $50,000 than to another participant

the value of whose account invested through Financial Engines is $75,000, yet the fee AFA

charges for the latter participant's account is materially greater than the fee for the former's

account.

35.    In fact, the interface of Financial Engines' advice program with Hewitt's

recordkeeping system does nothing more than implement investment instructions on behalf of

participants. It does so the same way that participants directly provide investment instructions in

the Plans under rights that all participants have simply by virtue of their participation in the

Plans. Accordingly, the Hewitt Defendants do nothing more than providing an electronic

mechanism for implementing instructions the participants could implement on their own.

36. The cost of maintaining a communications link between Hewitt and Financial

Engines does not increase materially when the number of participants in a Plan using Financial

Engine's services increases, but Defendants' fee for providing the service increases. An asset-

based fee for a fixed level of service is unreasonable.

37. Whether or not an asset-based fee for a fixed service is ever reasonable, the

amount of compensation the Hewitt Defendants received from Ms. Scott and similarly-situated

Plan participants was plainly unreasonable in relation to the services purportedly being provided.

38. As a result of this fee-sharing arrangement with Financial Engines, the Hewitt

Defendants either received excessive and unreasonable compensation for a service provided

entirely by another party or received for its own account consideration from a party (Financial

Engines) dealing with the Plans in transactions involving plan assets, in violation of ERISA

§ 406(b)(3), 29 U.S.C. § 1106(b)(3).

39. Even if, *arguendo*, the Hewitt Defendants are not considered fiduciaries with

respect to their investment management and advisory services, or the selection of Financial

Engines and the imposition of the fee-sharing arrangement on the Plans, the U.S. Supreme Court

has made it clear that ERISA § 502(a)(3) authorizes a civil action against a non-fiduciary who

participates in a transaction prohibited by ERISA § 406:[4]

> As petitioners and *amicus curiae* the United States observe, it has long been settled that
> when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property
> to a third person, the third person takes the property subject to the trust, unless he has
> purchased the property for value and without notice of the fiduciary's breach of duty. The

---

[4] *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

12

trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.[5]

## CLASS ACTION ALLEGATIONS

40.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes any participant or beneficiary of a retirement plan to bring an action individually on behalf of that plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109(a).

41.     In acting in this representative capacity, and to enhance the due process protections of unnamed participants and beneficiaries of the Plan and similarly-situated Plans, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §§ 1132(a)(2) and (3), Ms. Scott seeks to certify this matter as a class action on behalf of all participants and beneficiaries of the Caterpillar 401(k) Retirement Plan and other similarly-situated retirement Plans.  Ms. Scott seeks to certify, and to be appointed as representative of, the following class (the "Class"):

> The Caterpillar 401(k) Retirement Plan and every other participant-directed individual account retirement Plan for which Hewitt Associates, LLC, Aon Hewitt Financial Advisors, LLC and/or Hewitt Financial Services, LLC (collectively the "Hewitt Defendants") provide recordkeeping, investment management, or investment advisory services, and for which Financial Engines Advisors, LLC ("Financial Engines") provides investment advice or managed account services to Plan participants either directly or as sub-advisor to one or more of whose participants have elected to utilize Financial Engines' services, at any time from the earlier of (i) six years before the filing of this action; or (ii) in the event the Court determines that Defendants have concealed the facts and circumstances that would have apprised Plaintiff and/or the Class of the existence of Defendants' breach, the first date on which Defendants provided managed account investment advice services through Financial Engines either directly or as sub-advisor, and in either case, through the date of judgment (the "Class Period").

---

[5] *Id.* at 245.

42. This action meets the requirements of Rule 23 and is certifiable as a class action because the proposed Class includes potentially thousands of members and is so large that joinder of all its members is impracticable.

43. There are numerous questions of law and fact common to the Class because the Hewitt Defendants owed the same fiduciary duties to the Plan and all similarly-situated Plans and took the actions and omissions alleged herein against all of the Plans and not merely to any individual one. Thus, common questions of law and fact include the following:

     a. whether the Hewitt Defendants are fiduciaries with respect to the Plans and are liable for the remedies provided by 29 U.S.C. § 1109(a);

     b. what arrangements were made between the Hewitt Defendants and Financial Engines concerning payments to the Hewitt Defendants from the fees paid;

     c. what services the Hewitt Defendants and Financial Engines performed;

     d. whether, as Plan fiduciaries, the Hewitt Defendants breached their fiduciary duties to the Plans;

     e. how the losses to the Plans resulting from each breach of fiduciary duty are to be calculated; and

     f. what Plan-wide equitable and other relief the court should impose in light of the Hewitt Defendants' breaches of duty.

44. Ms. Scott's claims are typical of the claims of the Class because Ms. Scott was a Plan participant during the period at issue in this action, utilized Financial Engines' services, and all similarly-situated participants in the Plans were harmed by precisely the same misconduct by Defendants.

45. Ms. Scott is an adequate representative of the Class because she is a participant in the Plan during the proposed Class Period; has and is utilizing the services of Financial Engines; has no interest that conflicts with other members of the proposed Class; is committed to the vigorous representation of the Class; and has engaged experienced and competent attorneys to represent the Class.

46. Prosecution of separate actions by an individual retirement plan for these breaches of fiduciary duties would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Hewitt Defendants in respect to the discharge of their fiduciary duties to the Plans and personal liability to the Plans under 29 U.S.C. § 1109(a). Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

47. A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable; the losses suffered by individual Plans may be small; it may be impractical for individual Plans to enforce their rights through individual actions; and common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Ms. Scott is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

48. Ms. Scott's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

**COUNT I**
**Breach of Duty of Loyalty – Investment Advice Program**
**Dealing with Plan Assets for its Own Account**

49.     Ms. Scott repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

50.     ERISA § 404, 29 U.S.C. § 1104, requires Defendants to perform their fiduciary duties and responsibilities solely in the best interest of Plan participants for the purpose of providing them benefits under the Plans.

51.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits a fiduciary from dealing with the assets of a plan in its own interest or for its own account.

52.     ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a fiduciary from receiving any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

53.     Defendants acted as fiduciaries to Ms. Scott, the Plan, and the Plans by, *inter alia*: (a) purporting to provide investment advice to the Plans for a fee; (b) hiring Financial Engines and controlling the negotiation of the terms and conditions under which Financial Engines would provide its services to the Plan(s)' participants; and (c) selecting Financial Engines as an investment advice provider for the Plan(s) participants.

54.     Defendants breached their duties of loyalty under ERISA owed to Ms. Scott, the Plan, and the Plans by, *inter alia*: (a) devising an arrangement with Financial Engines for the purpose of collecting and paying to Defendants unreasonable and excessive fees for services provided by Financial Engines, at the expense of Ms. Scott and participants and the Plan and Plans generally, and concealing the true arrangement from Ms. Scott, the Plan and Plans; and (b)

charging unreasonable and excessive fees for the services provided to Financial Engines in connection with Financial Engines' investment advice program.

55.    Defendants are liable under 29 U.S.C. § 1109(a) to make good to the Caterpillar Plan and the Plans any losses they suffered resulting from the breaches of fiduciary duty alleged in this Count and are subject to other equitable or remedial relief as appropriate.

## COUNT II

### Prohibited Transaction - Excessive and Unreasonable Compensation for Services Related to Financial Engines in Violation of ERISA § 408(b)(2)

56.    Ms. Scott repeats and re-alleges the allegations contained above as if fully stated herein.

57.    Section 406(a)(1)(C) of ERISA, 29 U.S.C. § 1106(a)(1)(C), generally prohibits the direct or indirect furnishing of services between a plan and a party-in-interest.

58.    Section 3(14) of ERISA, 29 U.S.C. § 1002(14) defines a party-in-interest as, among other things, as a person providing services to a plan.

59.    As a result of providing recordkeeping services to the Plan and the Plans, Hewitt, AFA and HFS are parties-in-interest to the Plan and Plans.

60.    Section 408(b)(2) of ERISA, 29 U.S.C. § 1108(b)(2) exempts from the prohibitions of ERISA § 406(a)(1)(C) "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, *if no more than reasonable compensation is paid therefor*" (emphasis added).

61.    The compensation Defendants received in connection with Financial Engines' services to the Plans and their participants constitutes excessive and unreasonable compensation for which no exemption is available.

62. Accordingly, Defendants are liable to Ms. Scott and the Plans for their actual damages as proven at trial plus interest and attorneys' fees.

## COUNT III

### Prohibited Transaction - Receiving Consideration for its Personal Account from a Party Dealing With Such Plan in Connection with a Transaction Involving Plan Assets in Violation of ERISA § 406(b)(3)

63. Ms. Scott repeats and re-alleges the allegations contained above as if fully stated herein.

64. ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), prohibits a fiduciary from receiving any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

65. By providing investment advice and managed account services to Ms. Scott and participants in the Plans with respect to the investment of their Plan accounts, Financial Engines is dealing with the Plans in transactions involving Plan assets.

66. As a result of the payment from Financial Engines to the Hewitt Defendants of a portion of the fees charged by Financial Engines, the Hewitt Defendants have received consideration for their own personal account from a party dealing with such plan in connection with a transaction involving the assets of the plan in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3).

## COUNT IV
### Non-Fiduciary Liability for Fiduciary Breach –
### Receipt of Improper Payment from Investment Advisor

67. Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

18

68.     Financial Engines, as a fiduciary to Plaintiff, the Caterpillar Plan and the Plans, charged unreasonably excessive fees for the purpose of transferring plan assets to or for the benefit of the Hewitt Defendants as a parties-in-interest to the Plans.

69.     The authority provided in ERISA Section 502(a)(3) to a plan participant, beneficiary, or fiduciary to bring a civil action for appropriate equitable relief extends to a suit against a non-fiduciary "party in interest" to a prohibited transaction barred by section 406.[6]

70.     The Hewitt Defendants knew or should have known that its fee-sharing arrangement with Financial Engines violated sections 406(a) and 406(b) of ERISA and, as the recipient of the improper payment, is liable to Plaintiff and the Plans for disgorgement of the proceeds of the illegal arrangement.

71.     The Hewitt Defendants are liable under 29 U.S.C. § 1109(a) to make good to the Plans any losses to the Plans resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Certify this action as a class action as stated here and appoint Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B.     Declare that Defendants breached their fiduciary duties to the Class;

C.     Enjoin Defendants from further violations of its fiduciary responsibilities, obligations, and duties and from further engaging in transactions prohibited by ERISA;

D.     Order that Defendants make good to the Plans the losses resulting from their serial breaches of fiduciary duty;

---

[6] *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

     E.      Order that Defendants disgorge any profits that they have made through their breaches of fiduciary duty and prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants therefrom;

     F.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Plans;

     G.      Order Defendants to pay prejudgment interest; and

     H.      Award such other and further relief as the Court deems equitable and just.

DATED: January 27, 2017          Respectfully submitted,

                           CHERYL SCOTT, on behalf of herself, the
                           Caterpillar 401(k) Retirement Plan, and all
                           similarly situated,

                      By: _____*/s/ Suyash Agrawal*_____
                              One of her attorneys

Suyash Agrawal
MASSEY & GAIL LLP
50 E. Washington Street, Suite 400
Chicago, Illinois 60602
Telephone: (312) 283-1590
sagrawal@masseygail.com

Todd S. Collins*
Shanon J. Carson*
Ellen T. Noteware*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365
tcollins@bm.net
scarson@bm.net
enoteware@bm.net

Garrett W. Wotkyns*
John J. Nestico
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
8501 N. Scottsdale Rd., Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0145
gwotkyns@schneiderwallace.com
jnestico@schneiderwallace.com

Todd Schneider*
Mark Johnson*
SCHNEIDER WALLACE COTTRELL KONECKY WOTKYNS LLP
180 Montgomery Street, Ste. 2000
San Francisco, California 94104
Telephone: (415) 421-7100
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

*Pro Hac Vice application forthcoming

Attorneys for Cheryl Scott, et al.