IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHERYL SCOTT, on behalf of herself, the Caterpillar 401(k) Retirement Plan, and all similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AON HEWITT FINANCIAL ADVISORS, LLC, *et al.*, <br><br> Defendants. | NO. 1:17-CV-00679 <br><br> Hon. Sharon Johnson Coleman <br><br> Hon. Jeffrey T. Gilbert |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR
### MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

Craig C. Martin (6201581)
Amanda S. Amert (6271860)
Brienne M. Letourneau (6303812)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
(312) 923-2605
CMartin@jenner.com

Dated: July 24, 2017

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.    Scott Fails To State A Claim For Breach Of Fiduciary Duty (Count I). ............................. 2

        A.    AFA Is Not A Fiduciary For Purposes Of Negotiating Its Compensation Or Hiring Financial Engines As A Sub-Contractor. ................................................ 3

        B.    Hewitt is Not A Fiduciary For Any Purpose. ........................................................... 6

II.    Scott Fails To State A Claim Based On A Prohibited Transaction Against Either Defendant (Counts II and III). .............................................................................................. 7

        A.    Scott Fails To State A Claim Under ERISA § 406(a)(1)(C) (Count II). .................. 7

        B.    Scott Fails To State A Claim Under ERISA § 406(b)(3) (Count III). .................... 12

III.    Scott Fails To State A Claim For Non-Fiduciary Liability (Count IV). ............................ 15

CONCLUSION .............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allen v. GreatBanc Trust Co.*,
835 F. 3d 670 (7th Cir. 2016) ..........................................................................................9, 10

*Chesemore v. Alliance Holdings, Inc.*,
886 F. Supp. 2d 1007 (W.D. Wis. 2012), *aff'd*, 829 F.3d 803 (7th Cir. 2016)........................13

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837
(1984). ............................................................................................................................12

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ..................................................................................................7

*Danza v. Fidelity Mgmt. Trust Co.*,
533 F. App'x 120 (3d Cir. 2013) ............................................................................................8

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
899 F. Supp. 2d 310 (E.D. Pa. 2012), *aff'd*, 725 F.3d 406 (3d Cir. 2013)..............................14

*Faber v. Metro. Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2011)...................................................................................................13

*Frank Russell Co. v. Wellington Mgmt. Co., LLP*,
154 F.3d 97 (3d Cir. 1998).....................................................................................................5

*Haddock v. Nationwide Fin. Servs., Inc.*,
419 F. Supp. 2d 156 (D. Conn. 2006)..................................................................................13

*Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000).............................................................................................................15

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ............................................................................................4, 10

*Int'l Brotherhood of Painters and Allied Trades Union and Industry Pension
Fund v. Duval*,
925 F. Supp. 815 (D.D.C. 1996)..........................................................................................13

*John Morrell & Co. v. John Hancock Mut. Life Ins. Co.*,
No. 85 C 9166, 1988 WL 58619 (N.D. Ill. May 31, 1988) ...................................................6

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
   811 F.3d 998 (8th Cir. 2016) ..................................................................................4, 5

*McDougall v. Donovan*,
   552 F. Supp. 1206 (N.D. Ill. 1982) ................................................................................8

*Patrico v. Voya Fin., Inc.*,
   No. 16-cv-7070 (LGS), 2017 WL 2684065 (S.D.N.Y. June 20, 2017) ........................... passim

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ......................................................................................................2

*Plumb v. Fluid Pump Serv., Inc.*,
   124 F.3d 849 (7th Cir. 1997) ........................................................................................4

*S.E.C. v. Neto*,
   27 F. Supp. 3d 434 (S.D.N.Y. 2014) ...........................................................................14

*Schulist v. Blue Cross of Iowa*,
   717 F.2d 1127 (7th Cir. 1983) ......................................................................................5

*Surgicore, Inc. v. Midwest Operating Engineers Health & Welfare Fund*,
   No. 01-cv-9138, 2002 WL 31833767 (N.D. Ill. Dec. 13, 2002) ....................................8

**STATUTES**

29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A) ........................................................................4

29 U.S.C. § 1106(a)(1)(C), ERISA § 406(a)(1)(C) .....................................................7, 8, 10

29 U.S.C. § 1106(b)(3), ERISA § 406(b)(3) .........................................................12, 13, 14, 15

29 U.S.C. § 1108(b)(2), ERISA § 408(b)(2) ...........................................................9, 10, 11, 12

**OTHER AUTHORITIES**

77 Fed. Reg. 5632 ..................................................................................................................11

81 Fed. Reg. 21002-01 ...........................................................................................................12

Plaintiff Cheryl Scott's entire complaint relies on a fatally flawed premise. She asserts that defendants provided no services in exchange for the fees they received in connection with the investment advisory program offered by Caterpillar to participants in its 401(k) Plan.[1] In their opening brief, defendants showed that Scott's claims rest on a characterization of the defendants' relationships with Financial Engines, the Plan, and each other that cannot be reconciled with the contracts that govern those relationships. Instead of addressing these arguments directly, Scott's opposition attempts to muddy the waters by distorting the facts pled in the complaint to fit her desired narrative, while disregarding the plain language of the contracts underlying her claims. As the governing case law, contractual language, and allegations in the complaint make clear, Scott's allegations do not support a plausible inference of fiduciary breach or prohibited transactions. Her complaint should be dismissed.

## ARGUMENT

In her opposition ("Opp."), Scott uses an alphabet soup of acronyms that obscures, and often conflates, defendants' respective roles, which are described in defendants' opening brief.

Most importantly, defendant Hewitt serves as recordkeeper to the Plan. (Memo. at 2.) Hewitt does not provide investment advice. (*Id.*) Initially, under the Financial Engines Program, Caterpillar acted as the Plan's fiduciary in contracting directly with Financial Engines, an SEC-registered investment advisor. (*Id.* at 3, 6.) Pursuant to that contract, Financial Engines provided investment advisory services to Plan participants who opted to enroll. To make that possible, with Caterpillar's knowledge, Hewitt provided data transmission and technological services to

---

[1] Following defendant Hewitt Associates, LLC's recent launch as a standalone company, its name has changed to Alight Solutions LLC, and defendant AFA's name has changed to Alight Financial Advisors, LLC d/b/a Aon Hewitt Financial Advisors. Because the vast majority of the conduct at issue occurred prior to that transaction, however, defendants continue to refer to themselves as "Hewitt" and "AFA" for clarity and continuity. For brevity, the other definitions used in defendants' opening memorandum ("Memo.") also are used in this reply memorandum.

1

Financial Engines under a separate contract. (*Id.* at 4-7.) Under that contract, Financial Engines paid Hewitt a fee, and Hewitt provided Financial Engines with ongoing access to its proprietary systems, allowing Financial Engines to access and monitor the accounts of enrolled Plan participants, and execute advice recommendations on their behalf. (*See id.* at 5-7.)

Unlike Hewitt, AFA is an SEC-registered investment advisory firm. (*Id.* at 2.) Under the AFA Program in place since 2013, AFA serves as investment advisor to Plan participants. (*Id.* at 8.) It relies on Financial Engines' proprietary technology, but AFA, not Financial Engines, acts as a fiduciary in providing investment advisory services. (*Id.* at 7.) Financial Engines does not contract directly with Caterpillar or the Plan under the AFA Program. (*See id.* at 7-8.) Instead, AFA contracts with Plan fiduciaries Caterpillar and the Caterpillar Inc. Benefit Fund Committee, with full disclosure that AFA in turn subcontracts with Financial Engines. (*See id.* at 8.)

Against that background, it is clear that Scott's opposition fails to salvage her claims.

I. **Scott Fails To State A Claim For Breach Of Fiduciary Duty (Count I).**

Scott has failed to plead any facts that would establish that either AFA or Hewitt acted as a fiduciary when engaging in the challenged conduct. Because "[i]n every case charging breach of ERISA fiduciary duty," the "threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary . . . when taking the action subject to complaint," Scott's claims therefore cannot survive. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

In their opening brief, defendants demonstrated that governing case law mandates dismissal of Scott's complaint. Subsequently, the United States District Court for the Southern District of New York issued an opinion dismissing a nearly identical case filed by Scott's counsel, further illustrating the deficiencies of Scott's complaint. *Patrico v. Voya Fin., Inc.*, No. 16-cv-7070 (LGS), 2017 WL 2684065, at *5 (S.D.N.Y. June 20, 2017). The facts in *Patrico*

2

mirror Scott's allegations about the AFA Program: Plaintiff was a participant in the Nestle 401(k) plan who alleged that Voya Retirement Advisors ("VRA") breached its fiduciary duties by charging excessive fees for providing investment advice to plan participants. VRA, like AFA, had contracted with Nestle to provide investment advisory and managed account services, and subcontracted with Financial Engines to "provide[] the actual investment advice." *Id.* at *1. The *Patrico* court granted defendants' motion to dismiss, holding that "Defendants are not ERISA fiduciaries with respect to the fees charged for the investment advice service." *Id.* at *4.

Scott insists, without explanation, that *Patrico* is distinguishable. (*See* Opp. at 9 n.8, 17 n.16.) But as discussed below, there are no meaningful factual or legal differences between *Patrico* and this case. A comparison of the complaints in each case reveals that they contain dozens of identical or nearly identical paragraphs, and that the claims against VRA in *Patrico* are the same as Scott's claims against AFA.[2] *Patrico* is unquestionably on point, and its thorough analysis of the relevant case law and ERISA provisions and rejection of many of the same arguments that Scott advances here show that Scott's claims likewise should be dismissed.

### A. AFA Is Not A Fiduciary For Purposes Of Negotiating Its Compensation Or Hiring Financial Engines As A Sub-Contractor.

Despite Scott's inflammatory suggestion that AFA "concealed" its fiduciary status from the Court (Opp. at 8-9), AFA in fact repeatedly acknowledged in its opening brief that it is a fiduciary for the limited purpose of providing investment advice. (Memo. at 13-14.) But as

---

[2] For example, the complaints contain identical allegations that defendants violated ERISA. (*Compare* Compl. ¶¶ 26-29, 31-39, *with* Complaint, *Patrico v. Voya Fin., Inc.*, No. 1:16-cv-07070 (S.D.N.Y. Sept. 9, 2016), ECF No. 1 ("Patrico Compl.") ¶¶ 38-40, 42, 45-53 (attached as Exhibit 1).) Counts I and II of the complaints also are nearly identical, as are the class allegations and the requested relief. (*Compare* Compl. ¶¶ 40-62 and pp. 19-20, *with* Patrico Compl. ¶¶ 50-73 and pp. 20-21.)

3

defendants also explained, AFA's fiduciary status for that limited purpose is irrelevant here, because none of the disputed conduct involves the rendering of investment advice. The challenged conduct – *i.e.*, AFA's negotiation of its compensation and hiring of its subcontractor – also does not involve the exercise of discretionary control over the Plan. *See Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009); (*see also* Memo. at 14 & n.10 (collecting cases)).

Scott offers three arguments that AFA nevertheless is a fiduciary with respect to the conduct at issue. (*See* Opp. at 8-14.) All three fail.

First, Scott asserts that AFA "renders investment advice for a fee" (*id.* at 13-14), and "expressly acknowledged its fiduciary status in" its agreement with Caterpillar (*id.* at 8). This argument evinces a fundamental misunderstanding of ERISA. Fiduciary status under ERISA exists only "to the extent" that the defendant exercises discretionary control over a plan or its assets. 29 U.S.C. § 1002(21)(A). Here, AFA's agreement with Caterpillar provides that ████ ████████████████████████████████████████████████████████████████ ████████████ Scott mistakenly assumes that because AFA is a fiduciary for this limited purpose, it must be a fiduciary for all purposes. (Opp. at 9.) But the Seventh Circuit has stressed that courts must "ask whether [an entity] is a fiduciary *with respect to the particular activity at issue*." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997) (emphasis added). Thus, AFA can be liable for breaching its fiduciary duties only if it engaged in misconduct while fulfilling its sole fiduciary function, *i.e.*, providing investment advice. *See McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003-04 (8th Cir. 2016). Scott's complaint does not allege that AFA rendered defective investment advice, defeating her claim against AFA.

Second, Scott contends that AFA exercised discretionary control over Caterpillar's retention of Financial Engines. (Opp. at 11-13.) This makes no sense. Caterpillar's relationship

with Financial Engines ended when its relationship with AFA began. (Memo. at 8.) AFA contracted with Financial Engines to provide tools that AFA uses to serve the Plan. (Amert Decl. Ex. 1, AFA 2016 Form ADV Part 2A, at 10; *see also* Ex. 7, AFA-FE Agreement, § 2(B)(vi).) AFA's hiring of a subcontractor is a business decision, not a fiduciary function. *See Frank Russell Co. v. Wellington Mgmt. Co., LLP*, 154 F.3d 97, 104 (3d Cir. 1998). While Scott attempts to distinguish *Frank Russell* on the ground that "AFA selected FE as part of its express fiduciary responsibilities," Scott cites no authority for her assertion that hiring a subcontractor is an "express fiduciary responsibility." (Opp. at 13 n.12.) Nor is there any indication in any contract that AFA's retention of a subcontractor is a fiduciary responsibility to the Plan.

Third, Scott argues that AFA controlled its compensation from the Plan by deciding how much of its fee would be passed on to Financial Engines. (Opp. at 10-11.) But as in *Patrico*, "Defendants could not have unilaterally controlled the compensation they would receive" because Caterpillar "was free to select a different investment advice service provider or none at all." *Patrico*, 2017 WL 2684065, at *3.[3] The *Patrico* court also observed that "the Nestle-VRA Agreement disclosed Financial Engines as the ultimate source of the investment advice, so Nestle exercised final authority over this arrangement and was free to reject it or seek better terms." 2017 WL 2684065 at *4. Here as well, the contract between Caterpillar and AFA – which, as the Plan's fiduciary, Caterpillar exercised final authority to accept or reject – ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The *Patrico* court noted further that, "once the rate of compensation was set by the Nestle-VRA Agreement, nothing in that agreement or

---

[3] *See also Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1132 (7th Cir. 1983); *McCaffree*, 811 F.3d at 1003 (no fiduciary status where "[u]p until it signed the agreement with [defendant], [the plan sponsor] remained free to reject its terms and contract with an alternative service provider").

ERISA prevented VRA from reducing its costs in administering the program and retaining the difference." *Patrico*, 2017 WL 2684065, at *4. Again, the same is true here.

The *Patrico* court also observed that VRA lacked control over its compensation because its fees were tied to the number of plan participants and the balance of plan assets, and VRA controlled neither. *Id.* at *3. Thus, the court distinguished VRA's agreement with Financial Engines from cases in which defendants had direct control over their own compensation. *Id.*; *contra John Morrell & Co. v. John Hancock Mut. Life Ins. Co.*, No. 85 C 9166, 1988 WL 58619, at *3-4 (N.D. Ill. May 31, 1988) (service provider's compensation was directly tied to its payment of benefits claims, and fact issue existed as to its discretion over those payments) (cited in Opp. at 10, 15). Here as well, Scott alleges that AFA's compensation depends on a similar arrangement (Compl. ¶¶ 31-32), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, AFA does not control its compensation.

### B. Hewitt is Not A Fiduciary For Any Purpose.

Scott does not dispute that fiduciary status requires discretionary authority over the Plan or its assets. Instead, she argues that Hewitt is a fiduciary because it purportedly exercised control over Caterpillar's retention of Financial Engines under the Financial Engines Program. (Opp. at 14-15.) As with the AFA contract, however, Caterpillar had final authority to accept or reject the Financial Engines contract. *Patrico*, 2017 WL 2684065 at *4. Moreover, as defendants previously explained (Memo. at 12), the Hewitt-Financial Engines Agreement provides that "[t]he decision to engage Financial Engines . . . shall be made independently by the [plan sponsor] and each" participant. (Amert Decl. Ex. 6, Hewitt-FE Agreement, § 2(a).) Scott's assertion necessarily implies that Hewitt breached its contract with Financial Engines.

Scott does not address the merits of this argument, instead merely suggesting that the "Court is under no obligation to any weight to give [sic] . . . self-serving representations in a

6

contract." (Opp. at 15.) But the law in this circuit is to the contrary: The terms of a contract that is properly before the court "trump the facts or allegations presented in the Complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007). Scott does not dispute that the Hewitt-Financial Engines Agreement is properly before the Court. She also points to no fact alleged in the complaint that would plausibly support the conclusion that the contract was breached. Because the contract shows that Caterpillar, and not Hewitt, retained Financial Engines, the Court should reject Scott's conclusory allegation to the contrary.

Scott also asserts that Hewitt is a fiduciary because it controls the amount of compensation it receives from Financial Engines. (Opp. at 15.) Scott makes no attempt to explain how Hewitt's arms'-length negotiations with Financial Engines constitute an exercise of discretionary authority over the Plan, which, as explained above, is what ERISA requires for fiduciary status to attach. The Court should dismiss Scott's claim in Count I against Hewitt.

## II. Scott Fails To State A Claim Based On A Prohibited Transaction Against Either Defendant (Counts II and III).

Defendants explained in their opening brief that Scott's prohibited transaction claims fail because the transactions underlying those claims do not implicate the risks § 406 was designed to address. Scott's opposition fails to refute defendants' showing that none of the challenged transactions were impermissible payments involving Plan insiders.[4]

### A. Scott Fails To State A Claim Under ERISA § 406(a)(1)(C) (Count II).

Scott's claim against Hewitt for violation of § 406(a)(1)(C), which requires her to allege that a fiduciary caused the Plan to engage in a transaction with a party in interest, depends on the

---

[4] Scott asserts that defendants did not move on a claim for violation of ERISA § 406(b)(1). (Opp. at 16.) Scott's complaint mentions § 406(b)(1) only in an explanatory statement within her breach of fiduciary duty claim. (Compl. ¶ 51.) Scott fails to expressly allege that defendants violated § 406(b)(1), let alone facts supporting that conclusion, leaving no "claim" to address.

theory that Hewitt is a fiduciary that receives unreasonable fees. But as explained above, Hewitt is not a Plan fiduciary. Regardless, Scott does not attack the recordkeeping arrangement between Hewitt and the Plan, but rather, the arms'-length relationship between Hewitt and Financial Engines, which are service providers unaffiliated with the Plan or each other.

As defendants explained in their opening brief (at 16), a claim under § 406(a)(1)(C) requires allegations that the transaction was "between the plan and a party in interest." *Danza v. Fidelity Mgmt. Trust Co.*, 533 F. App'x 120, 125 (3d Cir. 2013). Scott makes no effort to distinguish *Danza*. Instead, she relies on a 35-year-old district court opinion, *McDougall v. Donovan*, to argue that the Plan indirectly transacted with Hewitt when Financial Engines paid Hewitt for its data and technology support services. (Opp. at 18–19 (citing 552 F. Supp. 1206 (N.D. Ill. 1982)).) *McDougall* held that parties engaged in an otherwise-prohibited transaction cannot avoid § 406(a) by inserting a nominal intermediary. 552 F. Supp. at 1215-16. It does not support the impracticably broad interpretation of "indirect transaction" that Scott advances.[5]

Unlike *McDougall*, the Hewitt-Financial Engines relationship involves services rendered by one unaffiliated service provider to another, which is not "the type of transaction at which § 1106(a) is aimed." *Cf. id.* Rather, it is "designed to address transactions by the fiduciary involving services rendered directly to the plan itself." *Surgicore, Inc. v. Midwest Operating Engineers Health & Welfare Fund*, No. 01-cv-9138, 2002 WL 31833767, at *3 (N.D. Ill. Dec. 13, 2002). Section 406(a) does not bar arms'-length transactions between unaffiliated entities.

---

[5] In *McDougall*, the plaintiff challenged a transaction whereby plan fiduciaries executed a scheme to purchase a jet aircraft from a party in interest using plan assets by briefly passing the aircraft through a third party instead of directly purchasing it from the party in interest. *Id.* at 1213. The court held that although the third party served as an intermediary, the transaction nevertheless was prohibited because it was orchestrated by the plan's fiduciaries, who merely inserted the third party in an attempt to evade the prohibitions of § 406(a). *Id.* at 1216.

8

*Danza*, 533 F. App'x at 125. This interpretation makes practical sense. In contrast, Scott's expansive formulation would require courts to trace funds paid out of a plan through all of the plan's service providers to assess whether fees paid to their contractors complied with ERISA.

Second, Scott fails to overcome defendants' showing that her complaint does not allege that a fiduciary caused the challenged transaction. Scott's attempt to save her claim is entirely circular. She first states her desired conclusion: that Hewitt was a fiduciary that caused the alleged transaction. (Opp. at 19.) She then supports that conclusion with another: that by causing the transaction, Hewitt exercised discretion, making it a fiduciary. (*Id.*) Both assertions are wrong, as set forth in Section I above. Scott adds a conclusory footnote contending that even if Hewitt were *not* a fiduciary and did *not* cause the transaction, it would still be liable because *somebody* caused the transaction, so Hewitt must have known it was prohibited. (*Id.* at 19 n.18.) But as the *Patrico* court concluded after rejecting similar arguments, a plaintiff who does not "allege that any ERISA fiduciary caused the Plan to pay" the disputed fees "with actual or constructive knowledge that the fees were excessive" fails to state a § 406(a) claim. 2017 WL 2684065, at *3-4. Here, Scott bases her § 406(a) claim against Hewitt entirely on allegations that *Hewitt* caused the Plan to engage Financial Engines. (*See* Compl. ¶ 29.) She fails to identify any fact that would support the conclusions that an alleged fiduciary other than Hewitt (1) caused the transaction, and (2) knew that Hewitt would receive an excessive fee.

Scott also fails to allege that the transactions fall beyond ERISA § 408(b)(2), which provides that § 406(a) "shall not apply" to transactions for "services necessary for . . . operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2). Scott relies on *Allen v. GreatBanc Trust Co.* to contend that § 408 does not apply at the pleading stage. (Opp. at 16-17 (citing 835 F.3d 670, 676 (7th Cir. 2016)).) But *Allen* did not abrogate the

9

Seventh Circuit's holding in *Hecker* that a plaintiff who nevertheless "cho[oses] to anticipate" an ERISA affirmative defense in her complaint "put[s] it in play" on a motion to dismiss. 556 F.3d at 588. Scott indisputably anticipates the § 408 defense by expressly citing it and repeatedly alleging that Hewitt's fees were unreasonable. (*See, e.g.*, Compl. ¶¶ 29, 36-38, 60, 61; *see also* Opp. at 20.) In fact, she styles Count II as a claim for "Violation of ERISA § 408(b)(2)."

Moreover, the Seventh Circuit acknowledged in *Allen* that "[a] district court has ample tools to screen frivolous claims, and the *Twombly-Iqbal* pleading standards require the plaintiffs to cross the line from the 'possible' violation to the 'plausible.'" 835 F.3d at 677. Scott's claim against Hewitt rests entirely on the assumption that Hewitt performed no services, making its fee unreasonable. (*See* Opp. at 20 and n.20 (arguing that "Hewitt used its relationship with the Plan to extract a fee from FE when *no services* were rendered in exchange") (emphasis added).) But Scott admits in her complaint that Hewitt *did* perform services for Financial Engines. (*See* Compl. ¶ 35 (admitting that Hewitt "provid[es] an electronic mechanism for implementing instructions" from Financial Engines that participants otherwise would have to "implement on their own"), *see also* ¶¶ 12, 33-34, 36-37.) Scott's own allegations defeat the premise of her claim, making it implausible.[6] For these reasons, Scott's § 406(a) claim against Hewitt fails.

Scott's attempts to save her § 406(a)(1)(C) claim against AFA are similarly defective. Scott attacks the propriety of AFA's bundled services arrangement with Financial Engines by engaging in misdirection. First, she conflates Hewitt and AFA by contending that "the

---

[6] Although Scott attempts to salvage her claim by arguing that Hewitt was "already obligated to provide" services to Financial Engines, she cites no such allegation in her complaint. (*See* Opp. at 20.) And despite submitting the 2008 Hewitt-Caterpillar recordkeeping agreement as an exhibit to her opposition (Bloom Decl. Ex. B), she cites no provision of it that required Hewitt to provide free services to Financial Engines. Nor does she allege any fact to support the suggestion in her opposition brief that Hewitt's fee disclosures were inadequate. (*See* Opp. at 20-21.)

10

investment advisory services were priced separately from the rest of *Hewitt's* recordkeeping services, and thus were not 'bundled.'" (Opp. at 22 (emphasis added).) But it is AFA's investment advisory services, and not Hewitt's recordkeeping services, that are relevant, and it is undisputed that AFA does not price Financial Engines' sub-advisory services separately from AFA's services. Such a "bundled services" arrangement is permissible under ERISA. (Memo. at 19-20 (citing *Reasonable Contract or Arrangement Under Section 408(b)(2)—Fee Disclosure*, 77 Fed. Reg. 5632, 5635 (Feb. 3, 2012).)

Scott next argues that AFA cannot offer investment advisory services under a bundled services arrangement because such services "are not eligible for treatment as a bundled service." (Opp. at 22.) This assertion mischaracterizes the Form 5500 instructions, which do not bar the provision of investment advisory services under a "bundled services arrangement," but rather, require fiduciaries and investment advisors to separately disclose their compensation. (Amert Decl. Ex. 14 at 26.) Scott does not allege that Financial Engines acts as a fiduciary when providing sub-advisory services under the AFA Program—indeed, she specifically contends that *AFA* does so. (Opp. at 13-14.) Moreover, Scott acknowledges that under the AFA Program, AFA was not legally required to disclose the fees it paid to Financial Engines. (Compl. ¶ 22 (alleging that "[b]y having the Plans' sponsors 'hire' AFA . . . and then having AFA enter into a sub-advisory agreement with Financial Engines," AFA was "no longer required to report the fees" it did not pass on to Financial Engines).) In fact, Scott erroneously points to the lack of public reporting requirements as the primary motivation for creation of the AFA Program. (*Id.*)

Scott also does not refute defendants' showing that her claim against AFA fails the DOL's "fair market" test, which examines aggregate compensation under § 408(b)(2), and not how compensation is allocated among bundled service providers. (Memo. at 20 (citing *Best*

11

*Interest Contract Exemption*, 81 Fed. Reg. 21002-01 (Apr. 8, 2016).) Scott contends that this is "nonsense" because "a significant portion of the total fees were being syphoned to pay off Hewitt for performing no work and providing no value," making the total fee "too high by at least the amount of the [purported] kickback." (Opp. at 23 n.1.) Scott's unsupported and conclusory assertion directly contradicts the DOL standard.[7] Scott attempts to distinguish the DOL ruling by claiming that it "is inapplicable" to non-bundled services. (Opp. at 23.) Even disregarding Scott's incorrect assertion that AFA and Financial Engines do not have a bundled services arrangement, the DOL in fact observed that the "fair market standard" for financial institutions such as AFA is identical to "the familiar reasonable compensation standard applicable to service providers" under § 408(b)(2) as a general matter. 81 Fed. Reg. 21002-01, 21055.

Scott does not suggest a reasonable fee for investment advisory services, or by how much AFA's fees supposedly exceed that amount. (*See* Opp. at 22–23.) She thus concedes that her claim against AFA is inadequately pled. Because Scott has triggered the § 408(b)(2) exemption by invoking it in her complaint, *see supra* at 9-10, yet fails to support her assertion that AFA's fees were unreasonable, her claim against AFA in Count II should be dismissed.

### B. Scott Fails To State A Claim Under ERISA § 406(b)(3) (Count III).

Scott does not dispute that her claims for violation of § 406(b)(3) require her to plausibly allege that each defendant is a fiduciary. Instead, she again lumps Hewitt and AFA together in an attempt to cast both as Plan fiduciaries with regard to the alleged transactions. Still, she fails to overcome defendants' showing to the contrary. In glossing over the admissions in her

---

[7] The DOL's reasonable interpretations of ERISA are entitled to deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984).

12

complaint that defeat her § 406(b)(3) claim against AFA as a matter of law, Scott also mischaracterizes AFA's relationship with Financial Engines.

Scott bases her § 406(b)(3) claim against Hewitt on her incorrect conclusion that Hewitt is a fiduciary. As explained above (at 6-7) and in the opening brief (at 10-13), Hewitt is not. Even assuming *arguendo* that Hewitt were a fiduciary, Scott fails to show that Hewitt's fees were paid out of plan assets—the other missing element of her claim. Scott essentially contends that § 406(b)(3) broadly covers any funds paid by one plan service provider to another. (Opp. at 23–24.) She relies on *Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006), and *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012), *aff'd*, 829 F.3d 803 (7th Cir. 2016), for support. Each is easily distinguished on its facts. *Haddock* involved "the plaintiffs' shares in Nationwide variable accounts" or proxies to those shares, which the court found were "indisputably plan assets." *Haddock*, 419 F. Supp. at 171. *Chesemore*, which involved a leveraged buyout using employee plan assets, is even further afield. 886 F. Supp. 2d at 1013–14.

Neither *Haddock* nor *Chesemore* holds that an ERISA plan perpetually maintains an ownership interest in the assets it pays out as compensation to its service providers even after the service provider distributes those funds in due course to its own contractors, vendors, and employees.[8] *Cf. Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 106 (2d Cir. 2011) (funds are no longer Plan assets when the Plan no longer "ha[s] an ownership interest" in them). Scott makes

---

[8] Scott also cites *International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund v. Duval*, 925 F. Supp. 815, 826-27 (D.D.C. 1996), in which the court determined that fees paid to a fiduciary by a plan service provider that were calculated as a percentage of the service provider's fees could be "plan assets." *Duval*, a 20-year-old district court opinion, has never been cited for the proposition that "plan assets" should be interpreted so expansively, and that reading is contrary to DOL guidance and more recent cases finding that a plan must have an ownership interest in funds properly identified as "plan assets." (*See* Memo. at 22-23.)

13

no effort to distinguish the cases defendants cited in their opening brief, which hold that once a plan has relinquished control of its assets, the plan no longer has an ownership interest in those funds, making them plan assets no longer. *See S.E.C. v. Neto*, 27 F. Supp. 3d 434, 446 (S.D.N.Y. 2014); *Edmonson v. Lincoln Nat. Life Ins. Co.*, 899 F. Supp. 2d 310, 326 (E.D. Pa. 2012), *aff'd*, 725 F.3d 406 (3d Cir. 2013). Scott makes no cogent argument that the Plan retains an ownership interest in services fees once they are paid to Financial Engines. She therefore fails to show that she has plausibly alleged the second element of her § 406(b)(3) claim against Hewitt.

Scott's § 406(b)(3) claim against AFA also lacks essential elements. Scott does not dispute the premise that a fiduciary cannot be liable under § 406(b)(3) for accepting compensation from a plan pursuant to a services agreement negotiated at arms' length. (Memo. at 23-24.) Instead, she mischaracterizes AFA's relationship with Financial Engines. She contends that under the AFA Program, participants paid Financial Engines service fees that were "kicked back" to AFA. (Compl. ¶ 66, Opp. at 24.) Scott concedes, however, that in fact, the Plan paid AFA for investment advisory services, and AFA then hired Financial Engines as a subcontractor. (Opp. at 24, Compl. ¶ 22.) Scott nevertheless argues that the actual agreement between AFA and Financial Engines is irrelevant, because under the Financial Engines Program (which, for Caterpillar, the AFA Program superseded), Financial Engines used to pay service fees to Hewitt. (*See* Opp. at 24.) Scott again ignores that, as acknowledged in her complaint and demonstrated by the contracts attached to her opposition (*see* Bloom Decl. Ex. A-D), AFA and Hewitt are separate companies offering different services, each with its own unique agreements with Financial Engines and the Plan. It does not "elevate[] form over substance" (Opp. at 24) to respect corporate distinctions, and Scott has offered no reason to disregard them. Scott simply alleges no plausible factual basis from which to conclude that AFA accepted "consideration for

14

[its] own personal account from a[] party dealing with" the Plan, 29 U.S.C. § 1106(b)(3), rather than bargained-for compensation from the Plan for its services.

### III. Scott Fails To State A Claim For Non-Fiduciary Liability (Count IV).

As defendants explained previously (Memo. at 24), a claim for non-fiduciary liability requires a plausible allegation that a prohibited transaction occurred. *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 248-49 (2000). Scott responds by relying on her preceding arguments, which are insufficient for the reasons explained in Section II above. Scott also contends that Hewitt "knew" that the payments it received from Financial Engines "were kickbacks" because Hewitt "was not providing any services in exchange." (Opp. at 25.) But as set forth above (at 10), Scott admits that, in fact, Hewitt *did* provide Financial Engines services in exchange for its fees. Hewitt's supposed "knowledge" that it "was not providing any services" therefore cannot be the factual basis of the *scienter* element of Scott's non-fiduciary liability claim. *See Patrico*, 2017 WL 2684065, at *4 (observing that plaintiff must allege knowledge that fee was excessive, and dismissing non-fiduciary liability claim for failure to do so). This Court should follow *Patrico* and dismiss Count IV.

### CONCLUSION

For all of the foregoing reasons and those set forth in defendants' opening brief, Scott's complaint should be dismissed in its entirety.

Dated: July 24, 2017            Respectfully submitted,

Aon Hewitt Financial Advisors, LLC and
Hewitt Associates, LLC

By: /s/Craig C. Martin
     One of Their Attorneys

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Northern District of Illinois Local Rule 5.5, the undersigned, an attorney of record in this case, hereby certifies that on July 24, 2017, a true and correct copy of **Defendants' Reply In Support Of Their Motion To Dismiss Plaintiff's Class Action Complaint** was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Craig C. Martin