**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHERYL SCOTT, on behalf of herself, the Caterpillar 401(k) Retirement Plan, and all similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 17 C 679 |
| v. | ) ) | Jeffrey T. Gilbert |
| AON HEWITT FINANCIAL, ADVISORS, LLC *et al.*, | ) ) ) | Magistrate Judge |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl Scott ("Scott") brings this putative class action on behalf of herself and other similarly situated individuals who are participants in the Caterpillar 401(k) Retirement Plan (the "Plan") against Defendants Hewitt Associates, LLC ("Hewitt") and Aon Hewitt Financial Advisors, LLC ("AFA"). Scott alleges causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, in connection with services provided by Defendants Hewitt and AFA to participants in the Plan who have chosen to use the automated investment advisory services offered by Caterpillar. Scott alleges that Defendants Hewitt and AFA breached their fiduciary duties to her and other Plan participants by receiving excessive fees in relation to the alleged services they provided. Scott also claims that by receiving excessive fees, both Hewitt and AFA engaged in transactions prohibited by ERISA. Alternatively, Scott argues that Hewitt and AFA are liable as non-fiduciaries for knowingly participating in and/or receiving benefits from certain transactions prohibited by ERISA.

Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. *See* [ECF No. 72.] This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim [ECF No. 35] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted without prejudice.

## I. BACKGROUND

The following facts are taken from Scott's complaint. *See* [ECF No. 1.] Scott is a retired former employee of Caterpillar and a participant in the retirement plan sponsored by Caterpillar, which is a defined 401(k) contribution plan. (Compl. ¶¶ 1, 10.) Under the Plan, participants contribute to their own retirement accounts and choose how to invest their contributions to the Plan among the options offered by Caterpillar. (Compl. ¶ 35.) Caterpillar retained Hewitt to provide record keeping services and other administrative services for the Plan. (Compl. ¶ 1.)

From 2012 to 2014, Caterpillar engaged Financial Engines to provide investment advisory services to the Plan's participants, including Scott (hereinafter, "the Financial Engines Program"). (Compl. ¶¶ 2, 3, 15.) Then, beginning in 2014 to the present, Caterpillar contracted with AFA to provide investment advisory services to Plan participants (hereinafter, "the AFA Program"). (Compl. ¶¶ 2, 3, 15.) Under the AFA Program, AFA then sub-contracted with Financial Engines to provide investment advisory services to the Plan's participants. (Compl. ¶ 4.) Under both programs, in order to provide the investment advisory services for which it was hired, Financial Engines needed access to the participants' 401(k) accounts to obtain investment-related information and to implement the participants' chosen investment strategies. (Compl. ¶ 35.) Hewitt provided and facilitated that access so that Financial Engines, AFA, and the Plan

2

participants had secure access to the necessary information to make contribution allocations and investment elections and to process the participants' investment choices. (Compl. ¶ 35.) Scott alleges the fees Hewitt and AFA received are excessive and amounted to improper kickbacks because they allegedly did not perform any material services in exchange for those fees. (Compl. ¶¶ 3, 5, 6, 26.)

Once Caterpillar retained Financial Engines to provide advisory investment services to Plan participants, Scott and the Plan participants individually chose whether to use the investment advisory services offered by Financial Engines. (Comp. ¶¶ 2, 14, 15, 27.) Annual fees were charged only to those participants who used the investment services. (Compl. ¶¶ 2, 15.) Hewitt provided Financial Engines with access to the participants' information that Financial Engines needed to provide its investment advisory services. (Compl. ¶ 35.) Similarly, once Caterpillar ended its direct relationship with Financial Engines, Caterpillar contracted with AFA, who entered into a subadvisory relationship with Financial Engines to continue to provide investment advice to Scott and other participants in the Plan who elected to have automated investment advisory services. (Compl. ¶¶ 4, 15.)

In Count I of her complaint, Scott alleges that Defendants Hewitt and AFA breached their fiduciary duties to her and other Plan participants and beneficiaries in violation of ERISA § 404, 29 U.S.C. § 1104. In Counts II and III, Scott alleges that Hewitt and AFA engaged in various prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106. In Count IV, Scott alleges that even if Hewitt and AFA are not fiduciaries, they are liable as non-fiduciaries for their involvement in prohibited transactions because they knowingly received improper payments from fiduciaries of the Plan.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.3d 1510, 1520 (7th Cir. 1990). In ruling on a Rule 12(b)(6) motion, the court must accept as true all well-pleaded facts in the plaintiff's complaint and draw all reasonable inferences from those facts in the plaintiff's favor. *Anchor Bank, FSB v. Hofer*, 549 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss, the complaint must provide the defendant with fair notice of the basis of the claims set forth in the complaint, and those claims must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility, however, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 662. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient." *Id.* A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. ANALYSIS

The gravamen of Scott's complaint is that Defendants Hewitt and AFA agreed to a "pay to play" or improper kickback scheme in which Financial Engines, in exchange for being chosen as the Plan's investment advisor under the Financial Engines Program or for providing subadvisory investment services under the AFA Program, agreed to kick back or share with Hewitt and AFA a significant portion of the fees charged for the automated investment services and collected from the individual Plan participants in violation of ERISA. According to Scott's

4

complaint, this fee arrangement is unrelated to any substantial functions performed by either Hewitt or AFA, improperly inflated the cost of the investment advisory services provided to her and other Plan participants, and violated the fiduciary and prohibited transactions provisions of ERISA, 29 U.S.C. §§ 1104, 1106.

In response, Defendants Hewitt and AFA argue that Scott's complaint fails to state any legally cognizable claims and should be dismissed. First, Defendants assert that Scott fails to state a claim for breach of fiduciary duty in Count I. Hewitt and AFA argue that Hewitt is not a fiduciary of the Plan, and that neither Hewitt nor AFA acted as a fiduciary with respect to Hewitt's receipt of fees from Financial Engines or AFA's retention of Financial Engines as sub-advisor. Second, Defendants argue that Scott's prohibited transaction and self-dealing claims in Counts II and III fail because she does not allege their essential elements. Finally, Hewitt and AFA assert Scott's non-fiduciary liability claim in Count IV should be dismissed because Scott fails to allege a predicate prohibited transaction.

## A. Count I: Fiduciary Duty

ERISA is a "broad, remedial" statute that is "designed to protect the rights of participants in employee benefit plans and their beneficiaries." *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1211 (7th Cir. 1983). The Seventh Circuit consistently has applied a liberal standard for determining fiduciary status and has held that courts should apply a "broad reading" of ERISA's fiduciary definition, as intended by Congress. *Baker v. Kingsley*, 387 F.3d 649, 663-64 (7th Cir. 2004); *Chicago Bd. Options Exch., Inc. v. Connecticut Gen. Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983). To be an ERISA fiduciary, a party must be named as a fiduciary in the plan or meet ERISA's functional definition:

> A person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U. S. C. § 1002(21)(A).[1] The threshold question in all cases charging breach of fiduciary duty is whether the defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

In order to state a claim for breach of fiduciary duty under ERISA, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (citing *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007)). Therefore, to establish liability under ERISA § 404, Scott first must demonstrate that Hewitt and AFA qualify as fiduciaries with respect to a plan when they engaged in the conduct alleged in her complaint. 29 U.S.C. § 1104(a); *see also Pegram*, 530 U.S. at 226.

In her complaint, Scott lumps her allegations together and does not necessarily distinguish between Hewitt and AFA. Instead, Scott generally alleges that Defendants acted as fiduciaries by: (1) purporting to provide investment advice to the Plan participants for a fee; (2) hiring Financial Engines and controlling the negotiation of the terms and conditions under which Financial Engines would provide its services to the Plan participants; and (3) selecting Financial Engines as an investment advice provider for the Plan participants. (Compl. ¶ 53.) Scott further alleges that Defendants breached their fiduciary duties by: (1) devising an arrangement with Financial Engines for the purpose of collecting and paying to Hewitt and later AFA unreasonable and excessive fees for services provided by Financial Engines, at the expense of the Plan

---

[1] For purposes of ERISA, a corporation is a person. 29 U.S.C. § 1002(9).

generally and the Plan participants, and concealing the parties' true arrangement; and (2) charging unreasonable and excessive fees for the services provided by Financial Engines in connection with its investment advice program. (Compl. ¶ 54.)

1. Scott Fails to State a Claim that Hewitt Is a Fiduciary

Defendants argue that Scott fails to allege Hewitt was a fiduciary for purposes of the conduct she challenges and that Scott does not, and cannot, allege that Hewitt assumed any discretionary authority or engaged in any discretionary activities that caused it to become a functional fiduciary of the Plan.

First, Scott argues that Hewitt acted as a fiduciary because it purportedly exercised control over Caterpillar's retention of Financial Engines under the Financial Engines Program. (Compl. ¶ 53.) *See also* Pl's Opposition Br. [ECF No. 55-1, at 14-15.] However, nowhere in her complaint does Scott allege that Hewitt is identified as a fiduciary in any Plan documents, and Scott's conclusory allegations that Hewitt controlled Caterpillar's decision to engage Financial Engines are contradicted by the Hewitt/Financial Engines Master Service Agreement. *See generally* [ECF No. 55-5, Ex. C.]

At this stage in the litigation when deciding a motion to dismiss, a court is required to construe the facts alleged in the complaint and all reasonable inferences in the light most favorable to the plaintiff. *Anchor Bank*, 549 F.3d at 614. Federal Rule of Civil Procedure 10(c) provides that a copy of a written instrument that is an exhibit to a complaint "is part of the pleading for all purposes." FED. R. CIV. P. 10(c). The "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454

(7th Cir. 1998); *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 832 F. Supp. 2d 940, 946 (N.D. Ill. 2011).

The issue here, however, is that the written instruments at issue in this case (*i.e.*, the Hewitt/Financial Engines Master Service Agreement, the Financial Services Agreement between Caterpillar and AFA, and the Advisory and Data Services Agreement between AFA and Financial Engines) are not attached to Scott's complaint. Federal Rule of Civil Procedure 12(d) provides that if matters outside the pleadings are presented to the court in a motion pursuant to Rule 12(b)(6), the court must treat the motion as one for summary judgment pursuant to Rule 56. In other words, in a Rule 12(b)(6) motion, the movant is not permitted to use facts or evidence outside of the pleadings to contravene factual allegations contained within a complaint. *See* FED. R. CIV. P. 12(d). However, exceptions to Rule 12(d) exist, including that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). This is a narrow exception to Rule 12(d) that applies to cases in which a contract must be interpreted because without it, "[a] plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach the document that would definitively prove the claim has no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Similar concerns appear to be implicated in this case.

Scott's complaint necessarily refers to and discusses the parties' agreements, including the Hewitt/Financial Engines Master Service Agreement, the Financial Services Agreement between Caterpillar and AFA, and the Advisory and Data Services Agreement between AFA and Financial Engines. The Court concludes that these agreements are central to Scott's claims and therefore properly before the Court. Thus, the Court may turn to the agreements themselves to

8

determine the nature of the parties' agreements, and "[t]o the extent that the contracts contradict the [c]omplaint, the contracts trump the facts or allegations presented in the [c]omplaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007) (citing *Flannery v. Recording Indus. Assoc. of Am.,* 354 F.3d 632, 638 (7th Cir. 2004); *Thompson v. Illinois Dept. of Prof. Regulation,* 300 F.3d 750, 754 (7th Cir. 2002); *Perkins v. Silverstein,* 939 F.2d 463, 469 n. 4 (7th Cir. 1991) (in determining the sufficiency of the complaint, the court may rely on exhibits to the complaint whenever the allegations of the complaint are materially inconsistent with those exhibits)).

The Hewitt/Financial Engines Master Service Agreement provides that "[t]he decision to engage Financial Engines . . . shall be made independently by the [plan sponsor] and each participant," and it strictly prohibits Hewitt from "negotiat[ing] the terms of any agreement between Financial Engines and a plan sponsor or participant." [ECF No. 55-5, Ex. C, at § 2(a) (AON 72).] The language of the Hewitt/Financial Engines Master Service Agreement makes it clear that Caterpillar, and not Hewitt, retained the sole and final authority to decide whether to hire Financial Engines. Scott's allegations that (1) Hewitt gave Caterpillar "no choice but to accept Financial Engines" if Caterpillar wished to provide investment advisory services (Compl. ¶ 26), and that (2) Hewitt hired Financial Engines on the Plan's behalf (Comp. ¶¶ 24, 27, 28) are conclusory and not plausible in light of the parties' agreement.

In light of the language of the Hewitt/Financial Engines Master Service Agreement, and nothing to the contrary in the record except Scott's bald allegations of "control," the Court concludes Caterpillar had sole authority to select and hire Financial Engines, and it is not plausible on this record that Hewitt had any final authority or control over the selection and hiring of Financial Engines. [ECF No. 55-5, Ex. C, at § 2(a) (AON 72).] Scott does not allege

any additional facts supporting a reasonable inference that Hewitt "exercised final authority over" Caterpillar's engagement of Financial Engines, that Hewitt gave Caterpillar no choice but to accept Financial Engines, or that Financial Engines hired Hewitt on the Plan's behalf. If Caterpillar believed, as Scott alleges, that the fee-sharing arrangement between Hewitt and Financial Engines would inflate the price of the investment services provided by Financial Engines, Caterpillar had the authority to decline to engage Financial Engines and not offer its investment services to Plan participants.

Recently, similar claims have been rejected by other district courts. *See Fleming v. Fidelity Management Trust Co.*, 2017 WL 4225624 (D. Mass. Sept. 22, 2017); *Chendes v. Xerox HR Solutions, LLC*, 2017 WL 4698970 (E.D. Mich. Oct. 19, 2017). The plaintiffs in *Fleming* and *Chendes* are represented by some of the same counsel as Scott, the plaintiff in the present case, and in those cases, the plaintiffs presented many of the same arguments and claims that Scott has advanced in this case. In both *Fleming* and *Chendes*, the plan sponsors, like Caterpillar in this case, directly hired Financial Engines to act as fiduciary for purposes of providing investment advice, and then Financial Engines had a separate contract with the plan record keepers, like Hewitt in this case, to connect with and utilize its proprietary recordkeeping systems, which is identical to the relationship between Financial Engines and Hewitt in the present case.

In *Fleming*, the district court held that when a plan sponsor retains the authority (and exercises that authority) to hire a provider like Financial Engines to act as a fiduciary for the purpose of providing investment advice and then that provider (*i.e.*, Financial Engines) separately contracts with a recorder keeper (*i.e.*, Hewitt) to obtain access to and utilize its proprietary recordkeeping in this course of providing its investment services, that arrangement

does not give rise to fiduciary liability for the record keeper. 2017 WL 4225624, at *7-9. This Court agrees.

In *Chendes*, however, the court noted that plaintiffs had alleged that Defendant Xerox, the records keeper like Hewitt in this case, controlled the negotiation of the terms and conditions under which Financial Engines would provide its services. 2017 WL 4698970, at *6. Although the court recognized that a general allegation of control was not sufficient to state a claim for breach of fiduciary duty, it also acknowledged that to the extent the plaintiffs could allege facts that Defendant Xerox was "directly involved in the negotiations" or "'exercised de facto control' over the election of [Financial Engines] as fiduciary for the Plans," they should be given leave to re-plead their claim. *Id.*

Like plaintiffs in *Chendes*, Scott also has alleged control. (Compl. ¶ 53) ("Defendants acted as fiduciaries ... by ... (b) hiring Financial Engines and controlling the negotiation of the terms and conditions under which Financial Engines would provide services to the Plan(s)' participants...."). The Court is persuaded by the reasoning set forth in *Chendes* and agrees that a general allegation that Hewitt controlled the negotiation Financial Engines without more specific allegations is not sufficient to survive a motion to dismiss.

Scott also argues that Hewitt acted as a fiduciary because it allegedly provided investment advice for a fee. To state a claim that Hewitt became a fiduciary under 29 U.S.C. § 1002(21)(A)(ii) by rendering investment advice for a fee, Scott must plead facts sufficient to demonstrate that (1) Hewitt provided individualized investment advice; (2) on a regular basis; (3) pursuant to a mutual agreement, arrangement, or understanding that (4) the advice would serve as a primary basis for the plan's investment decisions; and (5) the advice was rendered for a fee. *Walker v. Merrill Lynch & Co. Inc.*, 181 F. Supp. 3d 223, 233-34 (S.D.N.Y. 2016). In her

complaint, however, Scott simply alleges that Hewitt "purport[ed] to provide investment advice to the Plans for a fee" (Compl. ¶ 53), but alleges no facts in support of that conclusion. In contradiction to her claim that Hewitt provided investment advice, Scott alleges in her complaint that Caterpillar, in fact, contracted with Hewitt to provide "recordkeeping and other" ministerial services to the Plan. (Compl. ¶¶ 26, 28.) In addition, Scott acknowledges, again in contradiction to previous allegations, that under the Financial Engines Program, Financial Engines, and not Hewitt, "directly provided the advisory services to" Scott. (Compl. ¶ 14.)

Even construing the facts in her favor, as the Court must do at the motion to dismiss stage, nowhere in her complaint does Scott allege any facts to support a claim that Hewitt provided individualized investment advice to the Plan on a regular basis pursuant to a mutual agreement that its advice would serve as a primary basis for the Plan's investment decisions. There is nothing to indicate, other than Scott's bare and conclusory allegations, that Hewitt exercised discretionary authority over the Plan or its assets, and those bare and conclusory allegations are not enough to survive a motion to dismiss.

Scott also seems to argue that Hewitt breached its fiduciary duty by receiving excessive fees for the services it provided. However, in *Chendes*, the plaintiffs asserted a similar argument that Xerox was a fiduciary because it had discretion over the amount of its compensation. 2017 WL 4698970, at *4. The district court disagreed and concluded that Xerox did not retain discretion over its own compensation because (1) the fees it collected from Financial Engines were based on an arm's length negotiation between Financial Engines and Xerox, (2) Xerox's compensation was controlled by "factors outside of [its] discretion," such as "the number of participants who used [Financial Engines'] services and the valuation of the assets of those participants." 2017 WL 4698970, at *4. Ultimately, the district court granted the defendant's

motion to dismiss the plaintiff's breach of fiduciary claim on the ground that the defendant (Xerox) had not acted as a fiduciary when it engaged in the conduct that the plaintiffs challenged. 2017 WL 4698970, at *3-7. The same is true in this case, and Scott makes no attempt to explain how Hewitt's arms' length negotiations with Financial Engines to provide data transmission and technological services to Financial Engines under a separate contract constitutes an exercise of discretionary authority over the Plan or Plan assets.

Accordingly, for all of these reasons, the Court is not persuaded by any of Scott's arguments in support of her claims that Hewitt is a fiduciary or has a fiduciary duty to her and the Plan participants. Therefore, the claims in Count I against Hewitt are dismissed. The dismissal is without prejudice, and Scott may, if she chooses to do so, file an amended complaint consistent with the Court's Memorandum Opinion and Order.[2]

### 2. Scott Fails to State a Claim that AFA Is a Fiduciary for Purposes of Negotiating its Compensation or Hiring a Subcontractor

Defendants argue that Scott fails to state a claim for breach of fiduciary duty against AFA because she does not challenges any conduct by AFA related to the investment advice it provided. Rather, Scott challenges AFA's negotiation of its own compensation and the hiring of its subcontractor Financial Engines as conduct that breached their fiduciary duty. Defendants argue that neither activity is a fiduciary function properly attributable to AFA.

It is not disputed that AFA is a fiduciary to the Plan for the purpose of providing investment advice to the Plan participants, but that does not make AFA a fiduciary for all purposes. As discussed above, an entity is a fiduciary to the extent it exercises discretionary authority or control over the management or administration of a plan or its assets. *See* 29 U.S.C. § 1002(21)(A). ERISA's regulations provide that an entity, like AFA in this case, which is a

---

[2] At a status hearing held on February 22, 2018, after Defendants' motion to dismiss was fully briefed and was awaiting decision, Scott's counsel said they planned to file an amended complaint.

fiduciary for the limited purpose of providing investment advice "shall not be deemed to be a fiduciary regarding any assets of the plan or IRA with respect to which such person does not have any discretionary authority, discretionary control or discretionary responsibility, does not exercise any authority or control, does not render investment advice . . . for a fee or other compensation, and does not have any authority or responsibility to render such investment advice." 29 C.F.R. § 2510.3-21(d).

In order to state a claim that a service provider to an ERISA-governed plan breached a fiduciary duty by charging plan participants excessive fees, a plaintiff first must plead facts demonstrating that the provider owed a fiduciary duty to those participants. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, 253 (1993) (confirming that the "detailed duties and responsibilities" imposed by ERISA are "limited by their terms to fiduciaries"). According to ERISA, a party not specifically named as a fiduciary of a plan owes a fiduciary duty only "to the extent" that party (i) exercises any discretionary authority or control over management of the plan or its assets; (ii) offers "investment advice for a fee" to plan members; or (iii) has "discretionary authority" over plan "administration." 29 U.S.C. § 1002(21)(A). The phrase "to the extent" at the beginning of this provision demonstrates that fiduciary status under ERISA "is not an all-or-nothing concept." *Trs. of the Graphic Commc'ns Int'l Union Upper Mw. Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) (quoting *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002)). Therefore, courts assessing claims under ERISA must ask "whether [a] person was acting as a fiduciary . . . *when taking the action subject to complaint.*" *Pegram*, 530 U.S. at 226 (emphasis added). In a recent case involving excessive fee claims similar to those asserted here, the Third Circuit described this provision as requiring a "nexus" between the alleged basis for fiduciary responsibility and the wrongdoing alleged in the

complaint. *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284, 296 (3d Cir. 2014).

Scott alleges that AFA breached its fiduciary duties by receiving an excessive fee from Caterpillar. (Compl. ¶¶ 22, 54.) However, it is well-established that a service provider who negotiates its own compensation with a plan fiduciary at arm's length is not a fiduciary for that purpose. *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009) (collecting cases holding that a party is not a fiduciary "with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms"). Courts have held that a fiduciary's negotiation of its own compensation is a non-fiduciary act as a matter of law. *See Hecker*, 556 F.3d at 583 (citing case); *see also Chendes*, 2017 WL 4698970, at *6.

Recently, another district court dismissed a nearly identical case filed by Scott's counsel. *See Patrico v. Voya Fin., Inc.*, 2017 WL 2684065 (S.D.N.Y. June 20, 2017).[3] The facts in *Patrico* mirror Scott's allegations about the AFA Program: the plaintiff in that case was a participant in the Nestle 401(k) plan who alleged that Voya Retirement Advisors ("VRA") breached its fiduciary duties by charging excessive fees for providing investment advice to plan participants. VRA, like AFA in this case, had contracted with Nestle to provide investment advisory and managed account services, and then subcontracted with Financial Engines to "provide[] the actual investment advice." *Id.* at *1. The *Patrico* court granted defendants' motion to dismiss, holding that "Defendants are not ERISA fiduciaries with respect to the fees charged for the investment advice service." *Id.* at *4.

---

[3] The Court notes that Defendants submitted a more recent opinion in *Patrico v. Voya Fin., Inc.*, 2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018), in which that district court denied plaintiff leave to refile an amended complaint because the claims were futile and none would survive a motion to dismiss. Some of those claims are similar to claims at issue this case. As previously discussed, Plaintiff indicated, at a recent court hearing in this case, that she intended to file an amended complaint. The Court will not preempt that filing at this point and will consider this recent decision in *Patrico*, and any other cases cited by the parties, when resolving Defendants' inevitable motion to dismiss that amended complaint.

Similar to *Patrico*, AFA did not unilaterally control the compensation it would receive because Caterpillar was free to select a different investment advice service provider or none at all. *Patrico*, 2017 WL 2684065, at *3. The *Patrico* court also observed that "the Nestle-VRA Agreement disclosed Financial Engines as the ultimate source of the investment advice, so Nestle exercised final authority over this arrangement and was free to reject it or seek better terms." 2017 WL 2684065 at *4. Here, as well, the Financial Service Agreement between Caterpillar and AFA—which, as the Plan's fiduciary, Caterpillar exercised final authority to accept or reject— disclosed Financial Engines as a subadvisor whose tools would be used "to provide advice to [Plan] Participants." *See* [ECF No. 55-5, Ex. D, at §13 (AON 309).]

The *Patrico* court also observed that VRA lacked control over its compensation because its fees were tied to the number of plan participants and the balance of plan assets, and VRA controlled neither. *Id.* at *3. Similarly, Scott acknowledged that AFA's compensation depended on an identical arrangement (Compl. ¶¶ 31, 32), and the AFA/Caterpillar agreement confirms that. *See* [ECF No. 55-5, Ex. D, at §13 (AON 309).] This Court is persuaded by the court's analysis in *Patrico* and concludes that AFA was not a fiduciary when it negotiated at arm's length with Caterpillar and did not have control over its compensation.

Scott also contends that AFA exercised discretionary control over Caterpillar's retention of Financial Engines. Scott, however, acknowledges that Caterpillar ended its relationship with Financial Engines when it engaged AFA to provide investment advice to the Plan. (Comp. ¶¶ 4, 19.) As specifically set forth in the Financial Services Agreement between Caterpillar and AFA, AFA, and not Caterpillar, contracted with Financial Engines as a subadvisory to help provide investment advice to the Plan. *See* [ECF No. 55-5, Ex. D at §13 (AON 309)] ("AFA has retained Financial Engines Advisors L.L.C. ("Financial Engines") as subadvisor to assist it in providing

the Program. AFA shall use Financial Engines' proprietary advisory software and related tools to provide advice to Participants. AFA shall be fully responsible for the selection of Financial Engines and for Financial Engines' performance of its subadvisory obligations....").

Courts have held that "a decision which is strictly a corporate management business decision . . . impose[s] no fiduciary duties," because "[a] fiduciary who acts in a strictly business capacity is not acting 'with respect to a plan.'" *Frank Russell Co. v. Wellington Mgmt. Co., LLP*, 154 F.3d 97, 103-04 (3d Cir. 1998) (internal quotation marks omitted). Therefore, AFA's hiring of Financial Engines to provide subadvisory services is not a fiduciary function, and AFA's business decision to subcontract with Financial Engines does not give rise to a claim for breach of fiduciary duty. While Scott attempts to distinguish *Frank Russell* on the ground that AFA selected Financial Engines "as part of its express fiduciary responsibilities," Scott cites no authority for her assertion that hiring a subcontractor is an express fiduciary responsibility. Nor is there any indication in any term of the parties' agreement that AFA's retention of a subcontractor constitutes a fiduciary responsibility to the Plan.

In this case, AFA is a fiduciary only for the purpose of providing investment advice. AFA, therefore, only can be liable for breach of fiduciary duty to the extent that it engaged in misconduct in carrying out its sole fiduciary function, which is rendering investment advice. *See McCaffree Financial Corp. v. Principal Life Ins. Corp.*, 811 F.3d 998, 1003-1004 (8th Cir. 2016). AFA did not have any fiduciary duty to Plan participants during its arms-length negotiations with Caterpillar regarding its compensation or when AFA hired Financial Engines as a subadvisor, and nowhere in her complaint does Scott complain that AFA breached its fiduciary duties by rendering defective investment advice.

For all of these reasons, Scott fails to state a claim for breach of fiduciary duty against AFA, and Count I against AFA is dismissed. Again, the dismissal is without prejudice, and Scott is given leave to file an amended complaint, if she wishes to do so, that is consistent with the Court's Memorandum Opinion and Order.

**B. Count II: Prohibited Transactions under ERISA § 406(a)(1)(C)**

ERISA imposes general standards of loyalty and prudence that require fiduciaries to act solely in the interest of plan participants and to exercise their duties with the "care, skill, prudence, and diligence" of an objectively prudent person. 29 U.S.C. § 1104(a)(1); *Eyler v. Comm'r of Internal Revenue,* 88 F.3d 445, 454 (7th Cir. 1996). Section 406(a) of ERISA supplements the general fiduciary duty provisions by prohibiting certain transactions between the plan and a "party in interest," and the transactions barred by § 406(a) "generally involve uses of plan assets that are potentially harmful to the plan." *Lockhead Corp. v. Spink,* 517 U.S. 882, 893 (1996); *see also Keach v. U.S. Trust Co.,* 419 F.3d 626, 635 (7th Cir. 2005).

In Count II, Scott asserts that Defendants Hewitt and AFA engaged in prohibited transactions in violation of ERISA § 406(a)(1)(C) by receiving compensation "in connection with Financial Engines' services to the Plan and their participants" that was "excessive and unreasonable." (Compl. ¶¶ 57, 61.) To state a claim under § 406(a)(1)(C), a plaintiff must allege that the transaction in question was "between the plan and a party in interest." *Danza v. Fidelity Mgmt. Trust Co.,* 533 F. App'x 120, 125 (3rd Cir. 2013). In addition, a plaintiff also must allege that a plan fiduciary "caused the plan to engage in the allegedly unlawful transaction." *Lockheed,* 517 U.S. at 888-89.

1. <u>Scott Fails to State a § 406(a)(1)(C) Claim against Hewitt</u>

Defendants argue that Count II should be dismissed against Hewitt because Scott does not allege that the disputed transaction was between Hewitt and the Plan or that a fiduciary caused the Plan to engage in a prohibited transaction, both of which are required to state a claim for a prohibited transaction under § 406(a)(1)(C). In order to state a claim based on a prohibited transaction under § 406(a)(1)(C) against Hewitt, Scott is required to plead adequate facts to establish that Hewitt is a Plan fiduciary. As discussed above, however, the Court already has concluded Scott has failed to state a claim that Hewitt is Plan fiduciary, and therefore, Scott cannot allege threshold requirement for a claim for a prohibited transaction under § 406(a) that a fiduciary caused the Plan to engage in an unlawful transaction.

Scott's claim against Hewitt also is problematic because it is not predicated on a transaction between the Plan and a party in interest; rather, Scott challenges the transaction between Financial Engines and Hewitt— Financial Engines' payment of a portion of the fees that it received from the Plan to Hewitt under the Financial Engines Program. Nowhere in her complaint does Scott allege any facts that the Plan paid any fees to Hewitt in connection with the Financial Engines Program.

The court in *Patrico* rejected similar arguments and concluded that a plaintiff who does not "allege that any fiduciary caused the Plan to pay" the disputed fees "with actual or constructive knowledge that the fees were excessive" fails to state a § 406(a) claim. 2017 WL 264065, at *3-4. Here, Scott bases her claim against Hewitt entirely on allegations that Hewitt caused the Plan to engage Financial Engines. (Compl. ¶ 29.) She fails to identify any fact that would support the conclusions that an alleged fiduciary (other than Hewitt) (1) caused the

transaction, and (2) knew Hewitt would receive an excessive fee and that the transaction involved Plan assets.

The court in *Chendes* similarly rejected substantially identical claims and dismissed the plaintiff's prohibited transaction claims after concluding that the challenged transaction lacked the requisite involvement of a plan fiduciary and use of plan assets. Relying on *Hecker*, the court concluded that the payments from Financial Engines to the records keeper in that case did not constitute plan assets. 2017 WL 4698970, at * 9 (citing *Hecker*, 556 F.3d at 584). The plaintiff in *Chendes*, like Scott in this case, also had not cited any authority holding that funds paid by a plan to a service provider continue to be plan assets after the transfer. The *Chendes* court concluded that plaintiffs "fail to present any meaningful way that a court could draw a line representing where plan assets, once lawfully paid as fees to a service provider under terms of a negotiated agreement, would cease to be plan assets." 2017 WL 4698970, at * 9. This Court agrees and similarly rejects the arguments in this case.

For all of these reasons, Scott fails to state a claim that Hewitt engaged in a prohibited transaction in violation of ERISA § 406(a)(1)(C), and Count II is dismissed against Hewitt. Again, the dismissal is without prejudice with the same caveat as stated earlier in this Memorandum Opinion and Order.

2. Scott Fails to State a § 406(a)(1)(C) Claim against AFA

Scott also argues that AFA violated ERISA § 406(a)(1)(C) and engaged in a prohibited transaction by charging and accepting excessive fees for the investment advice it provided to the Plan participants. In response, Defendants argue that Scott fails to state a claim because she does not adequately allege that the total compensation paid by the Plan for the bundle of investment advisory services provided under the AFA Program was unreasonable.

Section 406(a) of ERISA prohibits plan fiduciaries from causing a plan to engage in many types of transactions with a party in interest, including the "furnishing of goods, services, or facilities between the plan and a party in interest," which is at issue in this case. 29 U.S.C. § 1106(a)(1)(C). Section 406, however, is subject to both statutory and administrative exemptions. *See* 29 U.S.C. § 1108(a)-(b). In particular, § 408(b) of ERISA enumerates specific transactions exempted from the prohibitions of § 406 ("statutory exemptions"), while § 408(a) gives the Secretary of Labor broad authority to create additional exemptions provided they are "in the interests of" and "protective of the rights" of plan participants and beneficiaries ("administrative exemptions"). 29 U.S.C. § 1108(a)-(b). At issue in this case is an exemption to the prohibited transaction rule. Specifically, § 408(b)(2) provides that a fiduciary who enters into a contract with a party in interest for "legal, accounting, or other services necessary for the establishment or operation of the plan" is exempt from the prohibited transaction rule of § 406(a) "if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

Defendants contend that the transactions Scott challenges in her complaint are covered by an exemption, and therefore, Count II against AFA is defective. Scott, however, argues that the Court should not dismiss Count II against AFA because the § 408 exemption is an affirmative defense, and she does not need to plead the absence of the exemption to the prohibited transaction. *See Allen v. GreatBanc Trust Co.*, 835 F.3d 670 (7th Cir. 2016). The Court recognizes that ordinarily a plaintiff need not anticipate and attempt to plead around affirmative defenses. *Chi. Bldg. Design v. Mongolian House, Inc.,* 770 F.3d 610, 613 (7th Cir. 2014). Yet, in her complaint, Scott specifically anticipated that Defendants would raise the statutory exemption set forth in § 408 (Compl. ¶ 60) and triggered it when she alleged that "[t]he compensation Defendants received in connection with Financial Engines' services to

the Plans and their participants constitutes excessive and unreasonable compensation for which no exemption is available." (Compl. ¶ 61).

As discussed above, the relevant question at the motion to dismiss stage is not whether the plaintiff ultimately will prevail on the merits of her claim but whether the complaint is sufficient to cross the federal pleading threshold. *See Skinner v. Switzer*, 562 U.S. 521, 529-30. Under federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. ERISA statutory provisions specifically permit a Plan fiduciary, like AFA in this case, to enter into a contract with a party in interest, like Financial Engines in this case, for "services necessary for the establishment or operation of the plan" and that such an arrangement is exempt from the prohibited transaction rule of § 406(a) "if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2). The question then becomes what is reasonable compensation and, in this case, whether Scott's conclusory allegation that the compensation at issue "constitutes excessive and unreasonable compensation" is enough "to raise the right to relief above the speculative level" as set forth in *Twombly*. 550 U.S. at 555. The Court concludes that Scott's allegations are not sufficient to raise the right to relief above the speculative level at this point without more.

In their memorandum of law in support of their Motion to Dismiss, Defendants cite to Department of Labor regulations that establish that a service provider may hire a subcontractor to provide some or even all of its services and confirm that "bundled service arrangements" are permissible under ERISA. Defs' Memorandum of Law in Support of their Motion to Dismiss, [ECF No. 36, at (citing 29 C.F.R. § 2550.408b-2; Reasonable Contract for Arrangement Under Section 408(b)(2)—Fee Disclosure, 77 Fed. Reg.5632, 5635 (Feb. 3, 2012)). In determining

whether compensation for a bundled services arrangement is reasonable under § 408(b)(2), the Department of Labor provided in a recent ruling that "the reasonable compensation standard under ERISA section 408(b)(2) . . . look[s] at the reasonableness of the aggregate compensation for all of the services." Best Interest Contract Exemption, 81 Fed. Reg. 21002-01, 201554 (Apr. 5, 2016). "[T]he standard is a fair market standard," and "there is no requirement to allocate specific compensation to specific services." *Id.* Thus, in order to adequately state a claim under § 406(a)(1)(C) against AFA, Scott must allege that the total compensation that Caterpillar paid to AFA for the bundle of investment advisory services provided under the AFA Program was unreasonable.

In her complaint, Scott alleges that the amount of compensation that AFA received "was plainly unreasonable in relation to the services purportedly being provided" (Compl. ¶ 37) and such payments were illegal kickbacks. (Compl. ¶¶ 3, 5, 6.) These are conclusory allegations. Scott further alleges that "[t]he compensation Defendants received in connection with Financial Engines' services to the Plans and their participants constitutes excessive and unreasonable compensation for which no exemption is available" (Compl. ¶ 61.) Scott, however, does not allege any other facts to support the "excessive" aspect of her excessive fee theory. Nor does she allege that the fees paid exceeded the fair market value of the services provided.

Scott argues in response to Defendants' motion that "a significant portion of the total fees were being syphoned to pay off Hewitt for performing no work and providing no value," thus making the total fee paid "too high by the at least the amount of the [alleged] kickback." Pl's Opposition Br. [ECF No. 55-1, at 23]. Again, these are conclusory statements. Scott's complaint does not include any factual allegations that challenge the fees paid as not consistent with the fair market value of the services provided or some other acceptable metric for a reasonable fee.

Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient." *Iqbal*, 556 U.S. at 662. A plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Scott has failed to allege the factual content sufficient to support her claim that AFA engaged in a prohibited transaction in violation of § 406(a)(1)(C) and that such a transaction is not exempt under § 408.

For all of these reasons, Count II is dismissed against AFA. The dismissal is without prejudice on the same terms as are described above with respect to others of Scott's claims.

## C. Count III: Prohibited Transactions under ERISA § 406(b)(3)

Section 406(b) of ERISA prohibits certain transactions between the plan and a fiduciary. The statue provides, in relevant part, that: "A fiduciary with respect to a plan shall not . . . (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving assets of the plan." 29 U.S.C. § 1106(b)(3). As with ERISA § 406(a) to state a claim for violation of § 406(b), a plaintiff is required to plead adequate facts to establish that the defendant is a fiduciary and that the fiduciary "deal[t] with assets of the plan." 29 U.S.C. § 1106(b)(3).

In Count III, Scott alleges that Hewitt and AFA violated ERISA § 406(b)(3) by "receiv[ing] consideration for their own personal account from a party dealing with" the Plan "[a]s a result of the payment from Financial Engines to [them] of a portion of the fees charged by Financial Engines" to the Plan. (Compl. ¶ 66.) To state a claim under § 406(b)(3), a plaintiff specifically must allege that the defendant (1) is a fiduciary, (2) who received "consideration for [its] own personal account from a[] party dealing with" the Plan, (3) "in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3); *see also In re: ERISA Float*

*Litigation*, 829 F.3d 55, 59-60 (7th Cir. 2016) (involvement of plan assets required); *Chicago Distr. Council of Carpenters Welfare Fund v. Caremark Inc.*, 474 F.3d 463, 472 n.4 (7th Cir. F.3d 2007) (fiduciary status required).

### 1. Scott Fails To State A § 406(b)(3) Claim Against Hewitt

Defendants argue that Count III cannot survive against Hewitt because Hewitt is not a fiduciary to the Plan, and Scott, therefore, cannot allege an essential element of her claim. The Court agrees. "ERISA § 406(b)(3) applies only to transactions between a plan and a fiduciary (not a party in interest)." *Skin Pathology Associates, Inc. v. Morgan Stanley & Co.*, 27 F. Supp. 3d 371, 375 (S.D.N.Y. 2014). Scott bases her § 406(b)(3) claim against Hewitt on her conclusory allegation that Hewitt is a fiduciary.

For the reasons discussed above, the Court has concluded that Scott has failed to allege facts sufficient support a claim that Hewitt is a fiduciary of the Plan for any purpose, let alone for purposes of facilitating the investment advisory services provided by Financial Engines. Therefore, because Scott has failed to state a claim that Hewitt is a fiduciary, she also cannot establish a § 406(a)(3) claim against Hewitt, and Count III is dismissed against Hewitt. The dismissal is without prejudice, and Scott is given leave to file an amended complaint consistent with the Court's Memorandum Opinion and Order if she can do so.

### 2. Scott Fails To State A § 406(b)(3) Claim Against AFA

Defendants argue that Scott's ERISA § 406(b)(3) claim against AFA fails because Scott does not allege that AFA received any consideration from a party dealing with the Plan. To engage in a § 406(b)(3) prohibited transaction, a party must receive "consideration for [its] own personal account from a[] party dealing with" the Plan. 29 U.S.C. § 1106(b)(3).

Scott does not dispute that a fiduciary cannot be liable under § 406(b)(3) for accepting compensation from a plan pursuant to a services agreement negotiated at arms' length. Instead, she argues that Plan participants paid Financial Engines for its investment services and that Financial Engines "kicked back" fees to AFA. Defendants respond that Scott mischaracterizes AFA's relationship with Financial Services. Although Scott alleges that AFA received "payment from Financial Engines" (Compl. ¶ 66), Scott admits elsewhere in her complaint (and Caterpillar's Financial Services Agreement with AFA and AFA's Advisory and Data Services Agreement with Financial Engines confirm) that, in fact, the Plan and its participants paid AFA, and AFA then paid "a sub-advisory fee" to Financial Engines. (Compl. ¶ 22.) *See also* [ECF Nos. 55-5, Ex. D at § 11; 55-5, Ex. A at §8.]

"Section 406(b)'s purpose is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their work." *Danza v. Fidelity Management Trust Co.*, 533 F. App'x 120, 126 (3rd Cir. 2013). Fees that the Plan and its participants pay to AFA for investment advisory services cannot give rise to a § 406(b)(3) claim because "[a] service provider cannot be held liable for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain." *Id.* Scott does not even attempt to distinguish *Danza*. The disputed transaction is AFA's payment for its work; there is no payment from Financial Engines to AFA. Scott failure to allege that AFA as a fiduciary received consideration from another party dealing with the Plan defeats her § 406(b)(3) claim against AFA.

For all of these reasons, Count III against AFA is dismissed. The dismissal is without prejudice on the same terms as are recited earlier.

**D. Count IV: Non-Fiduciary Liability**

In Count IV, Scott alleges that even if Hewitt and AFA otherwise are not fiduciaries, they still are liable under ERISA § 502(a)(3) for knowingly participating in and/or receiving the benefits from the prohibited transactions of other fiduciaries, and Scott is entitled to equitable relief from them. Defendants argue that Scott's claim for non-fiduciary liability should be dismissed because she fails to allege a predicate prohibited transaction occurred.

To state a § 502(a)(3) claim for non-fiduciary participation in a prohibited transaction, a plaintiff must allege that (1) a prohibited transaction occurred, and (2) the defendant "knowingly participated" in that prohibited transaction. 29 U.S.C § 1132(a)(3); *see, e.g., Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 248-49 (2000). In this case, Scott alleges that Defendants Hewitt and AFA received "improper payments" from Financial Engines, which they "knew or should have known . . . violated sections 406(a) and 406(b) of ERISA." (Compl. ¶ 70.) The factual predicate of Scott's non-fiduciary liability claim in Count IV, however, is based on the same allegations that support her prohibited transaction claims in Counts II and III. *Compare* Compl. ¶ 61 (alleging violation of § 406(a)(1)(c) based on "[t]he compensation Defendants received in connection with Financial Engines' services to the Plans"); Compl. ¶ 66 (alleging violation of § 406(b)(3) "[a]s a result of the payment from Financial Engines to the Hewitt Defendants of a portion of the fees charged by Financial Engines").

For the reasons already discussed herein, the Court has concluded that Scott has failed to allege sufficient facts to support her claims that Hewitt and AFA's transactions with Financial Engines are prohibited transactions. Therefore, Scott also fails to state any claim for non-fiduciary liability pursuant to ERISA § 502(a)(3) based on those same predicate transactions, and

Count IV is dismissed.  The dismissal again is without prejudice on the same terms as are recited above.

## IV. CONCLUSION

For all of the reasons set forth in the Court's Memorandum Opinion and Order, Defendants' Motion to Dismiss [ECF No. 35] is granted without prejudice. Plaintiff is given 30 days to file an amended complaint consistent with the Court's Memorandum Opinion and Order if she chooses to do so.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated: March 19, 2018